No. 41,089

BETTY L. MILLER, *Appellant,* v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, *Appellee.*

(331 P. 2d 310)

Opinion filed November 8, 1958.

*George W. Holland,* of Russell, argued the cause, and *Marvin E. Thompson* and *Clifford R. Holland, Jr.,* both of Russell, were with him on the briefs for appellant.

*T. B. Kelley* and *Glenn E. Opie,* of Great Bend, argued the cause, and *Fred L. Conner,* of Great Bend, and *Carl L. Matthews,* of Houston, Texas, were with them on the briefs for appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action to recover double indemnity under a life insurance policy.

The record discloses that Albert L. Miller, husband of Betty L. Miller (plaintiff-appellant), died of a heart attack October 19, 1956. At the time of his death he was the holder of a life insurance policy issued by The Prudential Insurance Company of America (defendant-appellee) of the face value of $5,000, with further provision for an additional $5,000 if his death resulted from accidental means as defined in the policy. Apparently, the company paid plaintiff the face amount of the policy but refused to pay the additional $5,000

for accidental death, whereupon she, as sole beneficiary, brought this action to recover the mentioned amount.

Plaintiff's petition alleged, among other things, that decedent's heart attack was caused, directly and independently of all other causes, by the vigorous and violent work performed by him in his employment, and that said work constituted bodily injuries effected solely through external, violent and accidental means under the terms and provisions of the insurance policy.

The pertinent provisions of the policy attached to her petition read:

"Except as provided under 'Conditions and Exceptions' below, the Company will pay the amount of the Accidental Means Death Benefit specified on the first page of the Policy upon receipt at the Home Office of due proof that the death of the Insured occurred as a result, directly and independently of all other causes, of bodily injuries effected solely through external, violent and accidental means. The aforesaid injuries must be evidenced by a visible contusion or wound on the exterior of the body except in the case of drowning or of internal injuries revealed by an autopsy. The Company shall have the right and opportunity to examine the body and, unless prohibited by law, to make an autopsy either before or after burial."

It may be noted defendant's answer admitted the issuance of the policy and that Albert L. Miller died as a result of a heart attack but specifically denied said heart attack was caused directly and independently of all other causes by the work, if any, performed by him, and further denied that the work, if any, constituted bodily injuries effected solely through external, violent and accidental means within the terms and conditions of the policy.

A jury was waived by the parties, and the case was submitted to the trial court on a stipulation of facts and an agreed written transcript of testimony.

The evidence as disclosed by the record is as follows: Plaintiff testified that she and Albert were married December 27, 1952, that she had never known him to be ill or to have suffered a heart condition, that he was a "roughneck" on a rotary rig belonging to the Murfin Drilling Company and appeared in excellent physical condition when he left for work at 1:15 p. m. October 19, 1956, the day of his death.

Mr. Swick, driller, testified that he was in charge of the crew with which Albert had worked for a week before his death, that Albert was an *experienced* oil field "roughneck," that Albert had driven the crew to work on the day he died and had appeared well and

healthy, and that he (Swick) had known Albert about one and one-half years and had never known him to be ill or to complain of heart ailments. He further testified that on that particular day it was the job of the crew to pull the rotary drill pipe from the well which had just been completed as a dry hole and Albert, as the "back-up" man, operated the tongs weighing several hundred pounds, which he snapped around each joint of drill pipe, holding it securely while the driller unscrewed the joint, pushed it out on the "catwalk," from there onto the "back wagon," rolled it back out onto a pile beside the "catwalk"—all the while operating the "cat line"—and unsnapped the tongs, repeating the process, in all, 115 times in two and one-half hours. He also testified the tongs were "pretty awkward," although "not awkward either after you get onto it, but they are balanced with the weights and you can take and raise them and lower them and move them around pretty easy," and that how hard the work was depended on whether it was performed by an experienced or inexperienced "roughneck" and Albert was an experienced "roughneck." Swick also testified that when this operation was completed about seven p. m. the crew took twenty to thirty minutes to eat supper, after which they proceeded to plug the dry hole with cement, an operation which required carrying fifteen sacks of cement (weighing ninety-four pounds each) to the mixing barrel, pouring each sack into the mixer, mixing it by hand shovels and then pouring the cement into the hole. Albert, while doing his share of this work, complained of a pain in his chest, describing it as "gas pains," whereupon Swick told him to sit down and rest a while, and upon checking a short time later found him lying on the ground gasping for air. Swick and the other two members of the crew propped up Albert's head; later, Swick decided to send someone to call for an ambulance and in the meantime he and one of the crew rubbed Albert's arms to promote circulation, although he could find no pulse. As far as Swick knew, decedent was taken by ambulance to the Hadley Memorial Hospital in Hays.

Dr. Schulz, who did not see or examine the body either before or after Albert's death, answered a hypothetical question relating the facts to the effect that in his opinion death resulted from a heart attack brought on by overexertion. However, on cross examination, he qualified his answer by stating that the attack could have been caused by "just plain exertion."

The trial court, after a review of the evidence, found generally in favor of the defendant and entered judgment accordingly. From an order overruling plaintiff's motion for a new trial, she appeals.

The gist of plaintiff's contention is that deceased died as a result of a heart attack brought about by internal injuries suffered while overexerting himself in vigorous and violent work and that such death is within the accidental death provision of defendant's policy.

At the outset it may be stated that the rule in this state (*Johnson v. Farmers and Bankers Life Ins. Co.*, 173 Kan. 8, 244 P. 2d 199) is that in an action to recover double indemnity for accidental death by reason of a provision in the insurance policy, the burden of proof is upon the plaintiff to show that the death resulted from injury due to an accident within the meaning of such provision. The question for our determination is whether the plaintiff met the burden of proof required.

There are many authorities, and not all in accord, which deal with the question of when recovery is authorized under an insurance policy providing for death effected through accidental means. We will make no attempt to exhaust the field or refer specifically to any particular case. Such cases are well annotated in 56 A. L. R. 2d 800-820. We are of the opinion that if work is being carried on voluntarily and intentionally in the usual way, death which follows a heart attack or heart failure, and which may be assumed to be unexpected, cannot be regarded as produced by accidental means within the meaning of an insurance policy providing for accidental death benefits, unless there is proof of some unusual happening preceding the heart attack or heart failure which may have caused death. Stated in another manner, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means, but if in the act which precedes the result something unforeseen or unusual occurs which produces it, then it has been produced through accidental means.

In this case, as far as the evidence discloses, the deceased was an experienced oil field "roughneck" and was performing the usual and ordinary work as such. There was no evidence of any slip, mishap, extraneous force, unusual occurrence or unforeseen development which took place at any time in the performance of the work. The handling of the tongs, pipe and cement was performed as usual and as intended. We cannot say the death of decedent, even

though unforeseen and unexpected, resulted directly from injuries sustained through accidental means as defined in the insurance policy.

Plaintiff's evidence failed to disclose the presence of visible contusions or wounds on the exterior of the body, or internal injuries which could have caused the heart attack and subsequent death, and no autopsy was performed. The court is not permitted to speculate as to the cause of decedent's heart attack and consequential death.

In our opinion plaintiff's evidence failed to show that insured's death resulted from injuries due to an accident within the meaning of the accidental death provision of the life insurance policy, and the judgment of the trial court should be affirmed.

It is so ordered.