No. 47,552

ROBERT STEELE, JR., *Appellee—Cross-Appellant,* v. GENERAL AMERI-
CAN LIFE INSURANCE COMPANY, *Appellant—Cross-Appellee.*

(535 P. 2d 948)

Opinion filed May 10, 1975.

*Ben R. Swank, Jr.,* of Slagle and Bernard, of Kansas City, Missouri, argued
the cause, and *Frank D. Menghini,* of Dear, Yarnevich and Carey, of Kansas
City, was with him on the brief for the appellant—cross-appellee.

*John H. Fields,* of Carson, Fields, Kugler and Boal, of Kansas City, argued
the cause, and *J. Nelson Thompson,* of Kansas City, Missouri, was with him
on the brief for the appellee—cross-appellant.

The opinion of the court was delivered by

PRAGER, J.: This is an action to recover medical expense benefits
under a group policy of health and accident insurance. The plain-
tiff-appellee is Robert Steele, Jr. He will be referred to in this
opinion as plaintiff or Steele. The defendant-appellant is General

American Life Insurance Company, Inc. We will refer to it as General American or the defendant.

The facts in this case as found by the district court were essentially as follows: General American issued a group health and accident insurance policy to Cherokee South Development Company, Inc. for the benefit of its employees. The policy provided coverage for medical expenses incurred by reason of accidental injury suffered by covered employees and their dependents. The plaintiff's wife, Roberta Steele, was a covered employee of Cherokee South at the time the plaintiff suffered the injuries involved here. Plaintiff himself was not an employee of Cherokee South but it is undisputed that he was a dependent of an employee and was protected under the group insurance contract. The plaintiff was injured as a result of a "family argument" between plaintiff and Roberta on February 2, 1971. The evidence as to what happened is somewhat conflicting. It is undisputed that during the course of the argument Roberta shot the plaintiff three times. Roberta in her first statement to the police stated that her husband was in the act of assaulting her. Her later statements and her testimony in court, however, were that the plaintiff was reprimanding her son and she thought he was going to hurt the boy. She further testified that the plaintiff had never struck her and did not do so on this occasion. The plaintiff's version of the affair was consistent from the beginning. He testified that he was reprimanding her son who had become involved in the argument and was threatening to strike the plaintiff. Plaintiff knocked the boy to the floor, put his foot on his chest to hold him in place and was telling him never to do that again when the shots were fired. It is clear that plaintiff and Roberta had had prior arguments and disputes. Neither of the parties had ever used a weapon on prior occasions and plaintiff had no weapon on this afternoon. It is clear that Roberta became upset and excited, went to her room and returned with the gun. Roberta shot the plaintiff once in the arm, once in the chest, and twice in the abdomen. Plaintiff had no warning that defendant had a gun and was going to shoot. In fact, according to plaintiff's testimony, he did not know there was a gun in the house at the time. After the shooting plaintiff was taken to Bethany Hospital where he was provided medical treatment.

Following the completion of his medical care the plaintiff submitted a claim for his expenses to Blue Cross which provided

medical coverage to plaintiff at his place of employment. Plaintiff's medical expenses were in the total amount of $2,524.20 of which all but $237 was paid by Blue Cross. Plaintiff then made claim against General American under its group policy for the balance of the medical expenses unpaid. General American refused to pay for three stated reasons:

(1) Plaintiff was not the proper party to claim benefits under the policy;

(2) The medical expenses were not incurred as a result of an accidental injury; and

(3) Plaintiff incurred the medical expenses as a result of injuries sustained in the commission of an assault.

General American further took the position that in no event would the plaintiff be entitled to recover more than the balance of medical expenses over and above those paid by Blue Cross since the "coordination of benefits" provision of the policy did not permit the plaintiff a double recovery from both Blue Cross and General American for the same medical charges. Plaintiff sought the help of the Kansas insurance commissioner who wrote General American suggesting that it pay the balance of plaintiff's medical expenses. General American refused to pay. Plaintiff finally sought the assistance of counsel and, after another refusal to pay, filed this action in the magistrate court of Wyandotte county seeking judgment against General American in the amount of $2,524.20 plus reasonable attorney fees. General American filed a motion to dismiss on the grounds that plaintiff was not the proper party plaintiff in the case on the theory that only Roberta Steele, the employee of the group policyholder, could bring suit. This motion was sustained and the plaintiff was allowed ten days to substitute the proper party. The plaintiff appealed the decision to the district court. After overruling a motion for summary judgment filed by General American, the district court tried the case on the merits without a jury. The trial court found in favor of the plaintiff in the amount of $237, the balance of the medical expenses not paid by Blue Cross. In addition the trial court awarded the plaintiff $500 as attorney fees. General American filed an appeal and the plaintiff, Robert Steele, Jr., filed a cross-appeal.

On the appeal General American contends in its first point that since plaintiff was not an employee of Cherokee South, he was not entitled to payment of benefits under the contract and therefore was not the real party in interest entitled to maintain the action. The trial court found that Mrs. Steele had signed appropriate

claim forms covering the claims of the anesthetist and the hospital and authorizing General American to pay the amounts due directly to them. It further found that General American refused to pay Roberta Steele, or the claimant, or anyone. It was the opinion of the trial court that Mr. Steele as a designated *insured* under the terms of the policy was entitled to maintain the action. Although it is clear that Robert Steele, Jr. was not an employee of Cherokee South, it is equally clear that as the spouse of an employee he is designated in the policy as an insured dependent under his wife's insurance coverage. The group policy provided "personal insurance" to the employees themselves and in addition "dependent insurance" to cover the dependents of an employee. The policy states that an "eligible dependent" includes the lawful spouse of the employee. An "insured individual" is defined in the definition section of the group policy as follows:

". . . 'insured individual' means as to any particular insurance coverage or benefit only an employee, *or any dependent of such employee,* insured in accordance with the terms and conditions of this policy for that particular insurance coverage or benefit as provided in the Insurance Schedule." (Emphasis supplied.)

The premium charged for coverage of both an employee and a spouse is slightly more than twice the premium charged where the employee is insured alone. In view of these provisions it cannot be denied that the plaintiff, Robert Steele, Jr., as the spouse of Roberta Steele was an "insured" under the policy and entitled to its protection. The question raised is whether Robert Steele, Jr., as an insured dependent is entitled to make a claim in his own right. General American takes the position that only the employee, Roberta Steele, was entitled to payment of benefits and therefore only she as an employee may bring the action. General American relies upon the payment of claims provision of the group policy which states as follows:

"PAYMENT OF CLAIMS

"All benefits provided by this policy other than a benefit for accidental death, if any, are payable *to the* employee, subject to any assignment of benefits in writing by the employee satisfactory to the Company . . ."

General American reasons as follows: Plaintiff was not an employee of Cherokee South; there was no evidence of an assignment of benefits to him by the employee, Roberta Steele; the policy is clear and unambiguous in stating that if benefits are due, only the employee, Roberta Steele, or her assignee is entitled to payment. Hence, it

concludes, Robert Steele, Jr. is not entitled to benefits and hence cannot maintain the action.

The trial court in holding that plaintiff, Robert Steele, Jr., could maintain an action under the policy did so on the basis that he was an insured within the terms of the policy or in the alternative was entitled to maintain the action as a third-party beneficiary. In our judgment the issue was correctly decided by the trial court. The group policy of General American is to be construed in accordance with Kansas law. Once it was established that the plaintiff was an "insured" under the terms of the policy, his right to make a claim and to bring an action for medical expenses incurred by him is clear. In our judgment the payment of claims provision quoted above should be interpreted in the light of the fact that under the group policy the policyholder is stated to be Cherokee South Development Company, Inc. and not its employees. The provision for payment of benefits to employees rather than to the policyholder is obviously included in the policy to make it clear that benefits are not payable to the employer as the policyholder but to its employees and their dependents who are provided insurance coverage by the policy. This conclusion must reasonably follow in view of the fact that separate insurance coverage designated "dependent insurance" is provided under the policy and dependents are specifically designated as insured individuals under the policy. In any event a dependent of an employee would at the very least stand in the position of a third-party beneficiary under the contract. Under Kansas decisions a third-party beneficiary may maintain an action to enforce a contract made for his benefit. (*Keith v. Schiefen-Stockham Insurance Agency, Inc.*, 209 Kan. 537, 498 P. 2d 265; *Millers Nat'l Ins. Co. v. Bunds*, 158 Kan. 662, 149 P. 2d 350; and *Lindesmith v. Republic Mutual Fire Ins. Co.*, 189 Kan. 201, 368 P. 2d 35.) In *Lindesmith* we held that the son of a policyholder who owned a family combination insurance policy was a proper party plaintiff to bring an action on the policy since the son was an insured and entitled to protection under the family policy. Here since the plaintiff, Robert Steele, Jr., is an insured protected by the policy and has incurred medical expenses, he has a right to make claim under the provisions of the policy and to bring an action to enforce his rights thereunder.

General American in its second point takes the position that the trial court erred because the evidence established that the plaintiff

incurred all his medical expenses as a result of injury sustained while he was committing an assault. General American relies on the exclusion section of the contract which states in pertinent part as follows:

"Benefits shall not be payable under the Medical Care Insurance coverage provided by this policy for or in connection with

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

(5) injury . . . resulting from participation in, or in consequence of having participated in, . . . *the commission of an assault* or a felony; . . ." (Emphasis supplied.)

In support of its position General American argues that the undisputed evidence shows that the plaintiff was the aggressor and that he had assaulted his wife and had his foot on his son's chest holding him on the floor at the time plaintiff was shot. Since his injuries were received during the commission of an assault, plaintiff should be barred from recovering benefits under the exclusion in the policy set forth above. Such exclusionary clauses which relieve the insurer from liability or responsibility for bodily injuries resulting from an assault are quite common in health and accident insurance policies. Certain general rules have become established for construing the assault limitation. The general rule to be applied in construing such clauses is stated in an annotation in 86 A. L. R. 2d 443 to be as follows:

"In the majority of cases where a clause in an insurance policy limits, or relieves the insurer from, liability for injuries or death resulting from an 'assault,' the courts have held that the assault by the insured must be more than a 'simple assault,' generally stating that it must be such an assault as would justify the person assaulted in taking the insured's life. Or, as some courts have put it, an assault which would relieve the insurer from liability must have been such that the insured could reasonably have anticipated that his action would result in bodily injury or death to himself." (pp. 445, 446.)

There are no Kansas cases exactly in point. The cases from other jurisdictions supporting this rule of construction are set forth in the annotation.

In Couch on Insurance 2d, § 41:660, it is stated that the word "assault" as used in a life insurance policy excluding liability in case of accidental injury or death caused by participating in or in consequence of having participated in an assault, refers not to a simple assault, but to such an assault as would justify the person assaulted in taking the life of the person who assaults. The Supreme Court of Arkansas interpreted the assault exclusion in an insurance policy in the following way:

"The character of the assault contemplated by an exclusion in an accidental death policy meant more than a simple assault; it must have been of such severity 'as would have justified the assaultee in inflicting death or serious injury by way of self-defense.' . . . The severity of an assault is ordinarily a question for the jury." (*Gregory v. Nat'l Life & Acc. Ins.*, 250 Ark. 770, 467 S. W. 2d 181.)

In the present case it was a question of fact to be determined by the trial court from the evidence whether the conduct of the plaintiff, Robert Steele, Jr., was such an assault as would justify the application of the exclusion contained in the group policy. The trial court had reason to find that in prior arguments Robert Steele, Jr., had never actually struck Roberta and that he did not strike her on the occasion when he was shot. He did not have a weapon in his possession. It does not appear that Roberta's son was in any real danger. Apparently plaintiff's first knowledge that Roberta had a weapon came when she began shooting. Under the circumstances it is difficult to find that Roberta was justified in shooting her husband. She apparently lost her head and was angry, upset, and excited. On the evidence we cannot say that the court erred in finding that the plaintiff's conduct was never more than a simple assault and was not of a type where plaintiff could have reasonably anticipated that his actions would have resulted in bodily injury or death to himself. We hold that the trial court did not err in its finding that the assault exclusion contained in the policy was not established as a defense to the plaintiff's claim for medical benefits under the policy.

The next point raised on this appeal by General American is that the evidence establishes as a matter of law that plaintiff's injuries were not the result of *accidental* bodily injury which had to be established by plaintiff before medical expense benefits would be payable under the group policy. The policy provided for recovery of medical expense benefits if the expenses were the result of an injury. In the general definition section it is declared that "injury" means only an accidental bodily injury. The parties agree that on this point the plaintiff had the burden of proof in the trial court. The determination of what is meant by the term "accidental bodily injury" in an insurance policy was before this court in *Akins v. Illinois Bankers Life Assurance Co.*, 166 Kan. 648, 203 P. 2d 180. In *Akins* the insured and his wife were having marital difficulties. One afternoon an argument ensued in which the insured hit his wife on the head with a pop bottle; the scuffle continued and he

then hit her again. The wife ran in the house and picked up a gun from a dresser. She was scared, worked up, and nervous. She fired the gun and her husband was killed. The issue presented to this court in *Akins* was whether the plaintiff-widow could recover for an accidental injury under an insurance policy. In syllabus ¶ 1 we defined accidental means as follows:

"Generally speaking 'accidental means' signifies a happening by chance and without intention or design, which happening is unforeseen, unexpected and unusual at the time it occurs but the term as used in accident insurance policies is not susceptible of exact definition and usually its application depends upon the facts of each particular case."

In syllabus ¶ 2 we stated:

"Where an insured is killed or injured in an encounter, fight or affray with another, his death is 'effected directly and independently of all other causes through accidental means' within the meaning of such a phrase as used in an accident insurance policy, even though he is the aggressor, if it appears from the facts disclosed by the evidence that he did not reasonably anticipate that his acts or course of conduct would result in death at the hands of his antagonist."

The rule which we have adopted in Kansas is the settled rule throughout the United States and is followed in practically every jurisdiction where the issue has arisen. (See the annotation in 49 A. L. R. 3d 673 at 679, where the cases which have followed the rule are set forth.) We do not see any logical reason to distinguish *Akins* on the basis that the insured in that case was killed whereas the plaintiff here was only injured. The cases in other jurisdictions do not make such a distinction. It seems to us that the rule should be the same whether or not the insured died as the result of injuries sustained during an altercation.

The determination of whether or not an injury was an accidental bodily injury under the rule of *Akins* is ordinarily a question of fact to be determined from the evidence in the particular case. In connection with point two we have recited in some detail the factual circumstances under which the plaintiff was injured in this case. Suffice it to say the finding of the trial court that plaintiff could not reasonably have anticipated that he would be shot by his wife was abundantly supported by the evidence and hence it cannot be disturbed. We have concluded that the trial court did not err in finding that the medical expenses incurred by the plaintiff were the result of accidental bodily injury within the meaning of the General American group insurance policy.

The defendant's final point on this appeal deals with the awarding of $500 attorney fees to the plaintiff. This amount was awarded by the court pursuant to K. S. A. 40-256, which provides for payment of attorney fees in actions against insurance companies if it appears from the evidence that the company has refused without just cause or excuse to pay the full amount of such loss. General American argues that its refusal to pay in this case was not without just cause or excuse. It contends in substance that the three defenses raised in this case and discussed above were reasonable defenses and cannot be said to constitute a frivolous and unfounded denial of liability. (*Koch, Administratrix v. Prudential Ins. Co.*, 205 Kan. 561, 470 P. 2d 756.) The trial court considered the issue of attorney fees as a separate issue after it had determined that General American was liable to the plaintiff under its group policy. As the basis for awarding attorney fees in this case the trial court in its memorandum letter of decision stated as follows:

"It is the defendant's contention that its refusal to pay the claim was not 'without just cause or excuse' and that the court, in fact, upheld its defense as against all sums in excess of $237.00.

"The evidence in the case, however, shows that this case could have been settled long before it was ever filed by paying plaintiff's original claim for approximately $219.00, and as early as September 15, 1971, the Insurance Commissioner advised defendant's counsel as to our Supreme Court's holding in such a case and suggested that it be settled. The defendant's continued refusal to pay the claim at that time was, in my opinion, without just cause or excuse. It was not until January 11, 1973, after the case had reached this court and considerable time and effort was expended, that defendant offered to settle the case for $212.00."

In *Wheeler v. Employer's Mutual Casualty Co.*, 211 Kan. 100, 505 P. 2d 768, we said that whether there are reasonable grounds for an insurance company to contest a claim depends upon the facts and circumstances of each particular case. We held there that the insurance company had refused without just cause or excuse to pay the claim under its policy in view of the overwhelming weight of authority in support of the plaintiff's position and our well established rules which govern the construction of insurance policies. Under all of the facts and circumstances shown in the record in this case we cannot fault the trial court in its finding that the defendant General American refused without just cause or excuse to pay the plaintiff's claim under its policy. We further find that an award of $500 attorney fees by the trial court was reasonable.

There remains for determination the cross-appeal filed on behalf of the plaintiff, Robert Steele, Jr. The basis of the cross-appeal is that the trial court erred in holding that the multiple coverage limitation in the policy barred a double recovery of medical expenses by plaintiff from both Blue Cross and General American. The multiple coverage limitation in the policy was as follows:

"If any person covered under this policy is also covered under any other Plan . . . and is entitled to benefits or services as to medical care . . . for which benefits are payable under this policy, the benefits otherwise payable under this policy shall be adjusted to the extent hereinafter provided if required by the terms of this provision so as to take account of the benefits or services under such other Plan."

The plaintiff maintains that this provision in the policy is invalid by reason of K. S. A. 1973 Supp. 40-2203 which he contends is applicable to a group policy of insurance as defined in K. S. A. 40-2209. This exact point was raised in *Gibson v. Metropolitan Life Ins. Co.,* 213 Kan. 764, 518 P. 2d 442. In *Gibson* we held that the provisions of K. S. A. 40-2203 were not applicable to group insurance policies and that a multiple coverage limitation in a group accident and sickness policy purporting to reduce the benefits otherwise payable to an employee's dependent having coverage under another group insurance plan, so that the benefits available under both coverages will not exceed the total amount of the allowable medical expenses, is not contrary to public policy. The plaintiff has attempted to distinguish *Gibson* from the present case. We have concluded, however, that this case is controlled by our decision in *Gibson* and that the multiple coverage limitation here is a valid limitation on the medical expense benefits payable under the General American policy. We have concluded that the trial court did not err in refusing the plaintiff a double recovery for the medical expenses previously paid by Blue Cross.

For the reasons set forth above the case is affirmed both on the appeal and cross-appeal.

FONTRON, J., dissenting.

FROMME, J., not participating.