(768 P.2d 320)

No. 62,670

MICHAEL L. WHITAKER, *Appellee/Cross-Appellant, v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Appellant/Cross-Appellee.*

Opinion filed February 10, 1989.

*Douglas M. Greenwald* and *William P. Coates, Jr.,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for the appellant.

*George W. Earnshaw,* of Merriam, and *Joseph W. Amick,* of Kansas City, Missouri, for the appellee.

Before LARSON, P.J., DAVIS, J., and FLOYD H. COFFMAN, District Judge Retired, assigned.

DAVIS, J.: The plaintiff, Michael L. Whitaker, brought this action against his insurer, State Farm Mutual Automobile Insurance Company, to recover personal injury protection (PIP) benefits for an injury he sustained while unloading an ice chest from his van. The trial court granted summary judgment in plaintiff's favor but denied plaintiff's request for attorney fees. State Farm appeals, contending that the trial court erred by failing to recognize a distinction between accidental means and accidental results and by finding coverage for the accidental injury when

only the result, and not the means, was accidental. We hold that this distinction is not recognized in Kansas and affirm. Plaintiff cross-appeals the denial of attorney fees. We affirm the trial court's denial of fees.

The facts are undisputed and were submitted by stipulation:

"1. State Farm issued an autombile liability insurance policy to plaintiff Michael L. Whitaker which contained provision for payment of personal injury protection benefits to the insured. That policy was in effect on March 22, 1987.

"2. On March 22, 1987, Michael L. Whitaker owned a 1986 Ford Aerostar. That vehicle was an insured vehicle under the State Farm insurance policy.

"3. At approximately 7:00 p.m. on the evening of March 22, 1987, plaintiff returned to his home in the Kansas City area following a trip to and from Phoenix. Plaintiff had driven his Ford Aerostar van on this trip and was accompanied on the trip by his wife and two children.

"4. Plaintiff was driving his van at the time that he arrived home. He pulled the van into his driveway, opened the garage door, and then drove the van inside the garage. He and his family then began unloading personal belongings from the van. Specifically, plaintiff exited the van (from the driver's door), walked around the back of the vehicle, and opened the side door of the van. He then proceeded to unload items for 'probably ten minutes' until the injury occurred.

"5. Plaintiff removed golf clubs, tennis rackets, some suitcases, books and games from the van. '[T]he last thing' he removed was an ice chest. By the time that he began to remove this ice chest, almost all of the family's luggage and belongings had been taken from the van. The ice chest was situated between the two captain's chairs (driver and passenger) in the front of the van.

"6. Plaintiff was inside the van when he began to remove the ice chest. He first picked up a 'little suitcase' belonging to his daughter with his left hand and then picked up the ice chest. When he moved or twisted his body as he began to step out of the vehicle, 'that's when I felt my back go out.' He was inside the van when he first felt the back pain.

"7. As a result of the back injury, plaintiff was hospitalized and incurred certain medical expenses, which he alleges total $7,334.56. Through this lawsuit, plaintiff is seeking recovery of those medical bills, in addition to $3,000 in alleged lost income, interest, and attorney's fees in the amount of $5,000.

"8. The State Farm policy at issue in this case provides, under 'Section II - No-Fault-Coverage P' that '[w]e will pay in accordance with the *No-Fault Act* for *bodily injury* to an *insured*, caused by accident resulting from the ownership, maintenance or use of a *motor vehicle*, benefits for'—medical expenses and loss of monthly earnings. These benefits constitute so-called PIP benefits as mandated by Kansas statute.

"9. The State Farm policy at issue in this case contains the following exclusion: There *is no coverage* (under Coverage P) for *bodily injury to any person if* that person 'Was Injured As A Result of Conduct While Loading or Unloading *A Motor Vehicle*. This item does not apply if the conduct occured while *occupying* the *motor vehicle.*'

"10. By letter dated September 14, 1987 . . ., State Farm advised counsel for plaintiff that 'we have concluded that the injury was not caused by accident, and

we therefore cannot afford PIP coverage to Mike Whitaker for any injuries sustained in the March 22, 1987 mishap.' "

The applicable statutes are contained in the Kansas Automobile Injury Reparations Act, which is commonly known as the "No-Fault Act." K.S.A. 40-3101 *et seq.* The declared purpose of this Act is "to provide a means of compensating persons promptly for accidental bodily injury arising out of the ownership, operation, maintenance or use of motor vehicles in lieu of liability for damages to the extent provided herein." K.S.A 40-3102. The legislature chose to achieve that purpose by requiring every owner of a motor vehicle registered in this state to obtain liability insurance, K.S.A. 1988 Supp. 40-3104(a), and by requiring every such policy to "include personal injury protection benefits to the named insured . . . for loss sustained . . . as a result of injury." K.S.A. 40-3107(f). The legislature defined the term "injury" to mean "bodily harm, sickness, disease or death resulting from an accident arising out of the ownership, maintenance or use of a motor vehicle." K.S.A. 1988 Supp. 40-3103(i). The legislature did not define the word "accident."

This court will construe the No-Fault Act liberally in order to achieve the legislature's purpose. *DiBassie v. American Standard Ins. Co. of Wisconsin,* 8 Kan. App. 2d 515, 521, 661 P.2d 812 (1983); *Bradley v. AID Insurance Co.,* 6 Kan. App. 2d 367, 382, 629 P.2d 720, *rev. denied* 230 Kan. 817 (1981).

## Coverage

Plaintiff and State Farm each moved for summary judgment based on the uncontroverted facts. State Farm argued that there was no coverage because there was nothing accidental about plaintiff's injury except the result. It sought to draw a distinction between policies insuring against "accidental results" and those insuring against the results of "accidental means," and argued that the legislature intended to require coverage only for those injuries resulting from accidental means. Plaintiff's injury, although "unforeseen and unintended," was not such an injury, State Farm concluded, because it "occurred during the wholly voluntary and intended acts of lifting and moving" by plaintiff. Plaintiff, on the other hand, argued that coverage did exist because the injury was accidental in the sense that it was "unforeseen, unexpected and unusal."

The trial court held that plaintiff's injury was the result of an

accident since it was unexpected, unintended, and unforeseen; that unloading was a use of the vehicle; and that plaintiff was occupying the vehicle when the injury occurred. State Farm's sole contention on appeal is that the trial court erred in not recognizing a distinction between policies insuring against "accidental results" and those insuring against the results of accidental means.

The proposed distinction between accidental results and accidental means was recognized by many courts after the United States Supreme Court approved a jury instruction making such a distinction in *Mutual Accident Association v. Barry*, 131 U.S. 100, 33 L. Ed. 60, 9 S. Ct. 755 (1889). Our Supreme Court, however, has never recognized the distinction and has expressly rejected it on several occasions.

The distinction was first rejected by the Supreme Court in *Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793 (1919), a workers' compensation case. The Kansas Workers' Compensation Act provides benefits, without regard to fault, if "personal injury by accident arising out of and in the course of employment is caused to an employee." K.S.A. 1988 Supp. 44-501. In *Gilliland,* the first case construing the words "by accident," the employer argued that the cause, not merely the result, had to be accidental. The court rejected the employer's contention, holding in an opinion by Justice Burch that the proposed distinction was contrary to the beneficial and remedial purpose of the Act. 104 Kan. at 773-77.

The court stated:

"The word accident does not have a settled legal signification. It does have, however, a generally accepted meaning, which is the same whether considered according to the popular understanding or the approved usage of language. An accident is simply an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force." 104 Kan. at 773.

The court also approved the observation that although the word "accident" usually refers to an unintended and unexpected occurrence which causes loss or injury, it may often refer to the loss or injury itself when the loss or injury is an unintended and unexpected consequence of its cause or when the cause is not known. 104 Kan. at 775.

In *Landress v. Phoenix Ins. Co.*, 291 U.S. 491, 78 L. Ed. 934, 54 S. Ct. 461 (1934), the United States Supreme Court again rec-

ognized the means-result distinction. Mr. Justice Cardozo dissented, warning that "[t]he attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog." He concluded that "[w]hen a man has died in such a way that his death is spoken of as an accident, he has died because of an accident, and hence by accidental means." 291 U.S. at 499 (Cardozo, J., dissenting).

Three years later, the means-result distinction was again presented to our Supreme Court in two cases involving accidental death benefits. In the first case, *Bukata v. Metropolitan Life Ins. Co.*, 145 Kan. 858, 67 P.2d 607 (1937), the insured died of a heat stroke while resting at his home. An accidental death benefit was payable if he died "in consequence of bodily injury effected solely through external, violent and accidental means." 145 Kan. at 859. The insurer denied the benefit, claiming that death had not been accidentally caused. After reviewing many conflicting cases, the court stated that it had "difficuly in distinguishing between accidental means and accidental results," 145 Kan. at 868, and concluded that the insured's death was by accidental means. 145 Kan. at 869.

In the second case, the insured died of a drug overdose and the insurer refused to pay the acciental death benefit, which was payable if the insured died "[s]olely from bodily injuries caused directly, exclusively, and independently of all other causes by external, violent, and purely accidental means." *Spence v. Equitable Life Assurance Soc.*, 146 Kan. 216, 217, 69 P.2d 713 (1937). The jury returned a general verdict for plaintiff, finding in answer to a special question that the insured did not know that he was ingesting a dangerous amount of the drug. 146 Kan. at 219. On appeal, the insurer argued that the insured's death was at most an accidental result; the cause, it argued, was not accidental since the insured had intentionally ingested the drug, albeit in ignorance of its effect. 146 Kan. at 220. The court disagreed, stating that it had "refused to adopt the attempted distinction between accidental results and accidental means" in *Bukata* and that it was satisfied that it had been correct in so refusing. 146 Kan. at 221. The court concluded its opinion by adopting Justice Burch's definition of an accident:

" 'An accident is simply an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force.' " 146 Kan. at 224 (quoting *Gilliland*, 104 Kan. at 773).

Thus, the insured's death from an accidental drug overdose was an accidental death within the meaning of the policy. 146 Kan. at 224.

In the fifty years since *Bukata* and *Spence* were decided, no litigant, so far as we can tell, has, until now asked the courts of this state to recognize a distinction between accidental means and accidental results.

State Farm argues that this distinction was implicitly recognized in *Miller v. Prudential Ins. Co.*, 183 Kan. 667, 331 P.2d 310 (1958). However, the question in that case was "whether plaintiff had met the burden of proof required," 183 Kan. at 670, and the court merely held that she had not, 183 Kan. 667 Syl. ¶ 2. The particular language on which State Farm relies has been interpreted not as recognizing a distinction between means and results, but as recognizing merely "that an unusual happening may constitute an accident." *Boring v. Haynes*, 209 Kan. 413, 422, 496 P.2d 1385 (1972).

We have reviewed other cases decided by the Supreme Court. We will not further lengthen this opinion by discussing them except to say that, in our opinion, none of them undercuts the holdings in *Bukata* and *Spence*. We would also add that Justice Burch's definition of "accident" as approved in *Spence* and quoted above has also been approved in *Williams v. Benefit Trust Life Ins. Co.*, 200 Kan. 51, 59, 434 P.2d 765 (1967); and *Boring v. Haynes*, 209 Kan. at 422.

We hold that the attempted distinction between accidental means and accidental results is not recognized in this state and affirm.

### Attorney Fees

The trial court denied plaintiff's request for attorney fees on the ground that State Farm had raised a genuine issue in good faith. We agree that State Farm has raised such an issue and affirm.

Two different attorney fee statutes are applicable. The first is K.S.A. 40-256, which provides that an insurer is liable for fees if it denies coverage "without just cause or excuse." The Supreme Court has held that "just cause" exists where an insurer has raised a genuine issue in good faith. *Friedman v. Alliance Ins. Co.*, 240 Kan. 229, 239, 729 P.2d 1160 (1986).

The second applicable statute is K.S.A. 40-3111(b), which provides that an insurer is liable for fees if it "unreasonably refused" to pay PIP benefits. In determining whether an insurer has acted unreasonably, this court has been guided by the case law developed under K.S.A. 40-256. *DiBassie v. American Standard Ins. Co. of Wisconsin,* 8 Kan. App. 2d at 522; *Hand v. State Farm Mut. Auto Ins. Co.,* 2 Kan. App. 2d 253, 577 P.2d 1202, *rev. denied* 225 Kan. 844 (1978). In *DiBassie,* we affirmed the trial court's award of fees where the insurer did not have a good faith argument against its duty to pay. 8 Kan. App. 2d at 523. In *Hand,* we affirmed the trial court's denial of fees on the ground that a good faith legal controversy had existed. 2 Kan. App. 2d at 261.

We conclude that the presence of a genuine issue raised in good faith bars an award of attorney fees under either K.S.A. 40-256 or K.S.A. 40-3111(b).

Affirmed.