**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 28, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

WICHITA FIREMEN'S RELIEF
ASSOCIATION,

Plaintiff - Appellant,

v.

KANSAS CITY LIFE INSURANCE
COMPANY,

Defendant - Appellee.

No. 14-3056
(D.C. No. 6:11-CV-01029-KGG)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **PHILLIPS**, and **MORITZ**, Circuit Judges.

This case involves a dispute over the meaning of an Accidental Death and

Dismemberment (AD&D) insurance policy under Kansas law.[1]  Plaintiff-

Appellant Wichita Firemen's Relief Association (WFRA) is the holder of a group

AD&D policy issued by Defendant-Appellee Kansas City Life Insurance

Company (KCL).  Under the policy, Captain Urban Eck of the Wichita Fire

Department was insured for loss that resulted "directly and independently of all

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[1] The parties agree that Kansas law applies to this dispute.

other causes from accidental bodily injury."  WFRA contends it was entitled to recover under the policy when Mr. Eck passed away after rupturing chordal structures in his heart while fighting a two-alarm condominium fire on December 13, 2009.  The district court[2] disagreed and granted KCL summary judgment, concluding that Mr. Eck's injury did not constitute an "accident" under Kansas law.  Wichita Firemen's Relief Ass'n (WFRA) v. Kansas City Life Ins. Co., No. 11–1029–KGG, 2014 WL 588064, at *5–9 (D. Kan. Feb. 14, 2014).  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reverse.


Background

Plaintiff WFRA is organized pursuant to the Firefighters Relief Act, Kan. Stat. Ann. §§ 40-1701 to 1709, and composed of appointed members of the Wichita Fire Department (WFD).  App. 2337.  Its purpose is "to receive, use and disburse funds for the benefit of the members of the Association or their beneficiaries."  Id.  Pursuant to its authority under the Firefighters Relief Act, WFRA purchased from KCL two types of insurance for the benefit of its members: (1) a life insurance policy; and (2) an AD&D rider to the life insurance policy.  Each provided for a benefit of $100,000, id. at 57, and each was in effect at the time of Mr. Eck's death.  The AD&D rider provided:

---

[2]  The parties agreed to have the case heard by a magistrate judge.  28 U.S.C. § 636(c).  For convenience, we refer to the district court or district judge, although a magistrate judge conducted the proceedings.

- 2 -

The benefit will be paid when satisfactory proof is received at the Home Office that:

(1) the loss described below results <u>directly and independently of all other causes from accidental bodily injuries;</u>
(2) the accident which caused the loss occurred while the individual was insured under this rider; and
(3) the loss occurred within 180 days after the accident.

<u>Id.</u> at 58. The term "accidental bodily injury" is not defined by the contract. The rider also excluded coverage for a loss caused by, contributed to, or resulting from "bodily or mental illness or disease of any kind, or medical or surgical treatment of the illness or disease." <u>Id.</u> at 59.

One of the WFD firemen covered by the KCL insurance policies was Mr. Eck, who served as a firefighter from 1982 until his death in 2010. Along with the other WFD firefighters, he had received departmental training in basic fire suppression tactics and was expected to be able to operate under conditions perilous to his life and health. <u>Id.</u> at 2839, 2842.

On December 13, 2009, Mr. Eck, along with seventy other city firefighters, responded to a two-alarm fire at Cedar Lakes Condominiums in Wichita, Kansas. Mr. Eck and his unit fought the fire for one hour under extreme conditions. His unit was assigned to make entry into the building but found that conditions were too hazardous. <u>Id.</u> at 2177. The unit subsequently used a chain saw and ladder to cut a hole in the building at the floor truss level, nine feet above ground, and attempted to get water onto the fire. <u>Id.</u> Although Mr. Eck did not fight fires of

this nature on a regular basis, the conditions of the fire were consistent with his training and job expectations. Following the fire, all four members of Mr. Eck's crew were taken to rehabilitation. Id. The lieutenant providing medical support to the officers observed that Mr. Eck "had an irregular heartbeat and his vitals would not come down to normal limits." Id. at 2205.

Mr. Eck subsequently sought follow-up treatment. Cardiologist Dr. Wassim Shaheen met with him on December 18 and noted that Mr. Eck reported his "symptoms started many years ago," but that since the fire "he noticed that his heart has been racing faster than it usually does." Id. at 2713. Dr. Shaheen performed a transesophageal echocardiogram, which revealed an enlargement of the left atrium and significant thickening of the posterior leaflet of the mitral valve. Id. at 2721. Mr. Eck was diagnosed with severe mitral insufficiency secondary to posterior leaflet mitral valve prolapse. Id. at 2722. Dr. Shaheen noted that the cause of the mitral valve leakage and prolapse was "probably the disrupted chordae and the myxomatous changes in the valve." Id. at 2727. Two days later, Dr. Shaheen performed a heart catheterization that demonstrated that Mr. Eck's mitral valve was in need of surgical repair. Id. at 2129.

Mr. Eck underwent surgery on December 29, which revealed a damaged mitral valve and three torn chordal structures. Id. at 2218. Although the surgeons believed that his heart was adequately repaired, when they removed him from the bypass machine his cardiac function was poor. On January 2, 2010, Mr. Eck died.

- 4 -

Conflicting evidence was presented about the cause of death. WFRA presented evidence tending to show that death was caused by an acute rupture of the chordae tendinae—the chordal structures that support the leaflets of the mitral valve—brought on by extreme physical exertion during the Cedar Lake Condominium fire. Id. at 2226–28 (medical opinion of Dr. Paul Uhlig, Medical Director of the Cardiovascular Intensive Care Unit at Wesley Medical Center). KCL relied upon evidence tending to show that the death was instead the product of chronic mitral valve disease.

WFRA filed claims for benefits under both the life insurance policy and the AD&D rider. KCL paid the life insurance benefit, but denied the claim under the AD&D rider. KCL's denial of coverage stated both that (1) "Mr. Eck's death did not result directly and independently from accidental bodily injury"; and (2) the exclusion of coverage for "bodily or mental illness or disease of any kind, or medical or surgical treatment of the illness or disease," applied. Id. at 2326–27.[3] WFRA's appeal was denied by KCL on the same grounds, and WFRA subsequently filed suit.

The district court granted KCL's motion for summary judgment. WFRA, 2014 WL 588064, at *5–9. The judge held that, as a matter of law, the plaintiff could not establish an "accidental bodily injury," because no unforeseen or

---

[3] KCL does not argue on appeal that summary judgment should have been granted on the alternative ground that the "illness or disease" exclusion applies.

unusual event brought about Mr. Eck's injury and death; he "did not get hit by a falling beam, did not slip and fall, and did not have the floor collapse beneath him." Id. at *7. WFRA timely appealed to this court.

Discussion

We review the grant of summary judgment de novo, applying the same standard as the district court. Digital Ally, Inc. v. Z3 Tech., LLC, 754 F.3d 802, 810 (10th Cir. 2014). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this type of case, "[t]he determination of whether or not an injury was an accidental bodily injury . . . is ordinarily a question of fact to be determined from the evidence in the particular case." Steele v. Gen. Am. Life Ins. Co., 535 P.2d 948, 954 (Kan. 1975); see also Boring v. Haynes, 496 P.2d 1385, 1390 (Kan. 1972) (describing summary judgment in an AD&D dispute as an "extreme remedy").

In determining whether summary judgment is appropriate, we view the evidence and reasonable inferences therefrom in the light most favorable to the non-movant. Hawkins v. Schwan's Home Serv., Inc., 778 F.3d 877, 882 (10th Cir. 2015). Thus, in the face of conflicting expert testimony regarding the cause

of Mr. Eck's death, we assume, as did the district court,[4] that Mr. Eck's death was the result of an acute rupture of the chordae tendinae caused by extreme physical exertion while fighting the Cedar Lakes Condominiums fire.

I.     Interpretation of the AD&D Rider

WFRA has the burden to show that Mr. Eck's injuries are within the scope of its AD&D policy.  Steele, 535 P.2d at 953; Miller v. Prudential Ins. Co. of Am., 331 P.2d 310, 312 (Kan. 1958).  In interpreting insurance contracts, Kansas courts "try to ascertain the parties' intention from the language used, taking into account the situation of the parties, the nature of the subject matter, and the purpose to be accomplished."  Am. Special Risk Mgmt. Corp. v. Cahow, 192 P.3d 614, 621 (Kan. 2008).  Where insurance provisions are ambiguous, the language is interpreted based on what a "reasonably prudent insured would understand the language to mean."  Id.

The AD&D policy insures against loss that "results directly and independently of all other causes from accidental bodily injury."  Kansas courts interpreting such contracts inquire whether the bodily injury at issue constitutes an "accident"—i.e., "an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force."  Gilliland v. Ash Grove Lime & Portland Cement Co., 180 P. 793, 794

---

[4] Appellant's counsel repeatedly mischaracterized this assumption to the court at oral argument, suggesting that the district court specifically found that Mr. Eck's death was caused by an acute rupture of the chordae tendinae.

(Kan. 1919); see Spence v. Equitable Life Assur. Soc'y of U.S., 69 P.2d 713, 717 (Kan. 1937); Whitaker v. State Farm Mut. Auto. Ins. Co., 768 P.2d 320, 323 (Kan. Ct. App. 1989). In applying this standard, courts have considered whether a plaintiff could "reasonably have anticipated" the bodily injury that occurred. Steele, 535 P.2d at 954.

The district court concluded that, as a matter of law, Mr. Eck's injuries were not covered by the AD&D contract. The court was persuaded that Mr. Eck was performing his regular duties as a fireman, and that although these duties required extreme exertion, no "accident"—such as getting hit by a falling beam, slipping and falling, or the floor collapsing—had occurred. WFRA, 2014 WL 588064, at *6–7. The judge relied heavily upon the Kansas Supreme Court decision in Miller, which held that an oil field worker who suffered a heart attack while performing his ordinary yet strenuous duties did not suffer an injury by "accidental means." 331 P.2d at 312. Finding that Mr. Eck's "participation in fighting the fire was not accidental," the judge concluded that the plaintiff "fail[ed] to establish in any way that [Mr. Eck's] death was caused by an 'accidental means.'" WFRA, 2014 WL 588064, at *8.

WFRA first argues that the judge improperly applied an "accidental means" standard, in violation of both the explicit terms of the contract and established

Kansas law.  Aplt. Br. 21.[5]  Certain courts, including the United States Supreme

Court, have recognized a distinction between insurance contracts covering

"accidental results" and "accidental means."  See, e.g., Landress v. Phoenix Mut.

Life Ins. Co., 291 U.S. 491, 496 (1934) ("[H]ere the carefully chosen words

defining liability distinguish between the result and the external means which

produces it.").  But see id. at 499 (Cardozo, J., dissenting) ("The attempted

distinction between accidental results and accidental means will plunge this

branch of the law into a Serbonian Bog.").  The accidental means standard is a

more difficult threshold to satisfy, as "the activity or occurrence that led to the

injury must have been accidental."  Winchester v. Prudential Life Ins. Co. of Am.,

975 F.2d 1479, 1487 (10th Cir. 1992).  However, Kansas courts have consistently

rejected this distinction.  See Spence, 69 P.2d at 715 (describing earlier Kansas

Supreme Court precedent as "refus[ing] to adopt the attempted distinction

between accidental results and accidental means" and stating its satisfaction with

this conclusion); Gilliland, 180 P. at 794–96 (rejecting defendant's proposed

distinction between an injury and the accident that caused it); Whitaker, 768 P.2d

at 324 ("We hold that the attempted distinction between accidental means and

---

[5] KCL contends that WFRA invited (or, alternatively, forfeited its challenge to) this alleged error by repeatedly relying upon cases dealing with "accidental means" to the district court and failing to articulate the legal standard for which it now argues.  Aplee. Br. 17–22.  We note that a court is responsible for applying the correct law.  In any event, our resolution of the case does not turn on a finding that the district court improperly imposed an "accidental means" standard.

accidental results is not recognized in this state . . . ."); see also N.Y. Life Ins. Co. v. Cooper, 158 F.2d 257, 258–59 (10th Cir. 1946) (surveying Kansas AD&D cases and concluding that "the Supreme Court of Kansas makes no distinction between accidental means and accidental result of intended means").

It is unclear to us whether the district court improperly required WFRA to show Mr. Eck's injuries arose from "accidental means." Its analysis relies heavily on the Kansas Supreme Court's language in Miller that "if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means." 331 P.2d at 312. We view Miller as an anomaly in the steady line of Kansas Supreme Court and appellate decisions that have repeatedly rejected the more stringent "accidental means" standard. See, e.g., Spence, 69 P.2d at 713 (rejecting distinction between accidental means and results even where policy covered death by "purely accidental means"); Gilliland, 180 P. at 794; Whitaker, 768 P.2d at 324. That said, the district court's analysis began by defining accident—"an undesigned, sudden, and unexpected event, usually of an afflictive character, and often accompanied by a manifestation of force"—in accordance with Kansas law. And, its conclusion reprised this language, noting that Mr. Eck had not been subjected to an "unexpected event" or "manifestation of force." WFRA, 2014 WL 588064, at *9.

Even assuming the district court recited the appropriate legal standard, it

incorrectly granted summary judgment. Quite simply, on this record, genuine issues of material fact exist as to whether the rupture of chordal structures within Mr. Eck's heart, brought upon by extreme exertion in fighting a fire, constituted "accidental bodily injury."

In Gilliland, the seminal case defining "accident" under Kansas law, the plaintiff was employed as a worker within the sacking department of a rock quarry, where he broke up large fragments of rock by sledge. 180 P. at 793. While at work one day, he began to hemorrhage blood and passed away before medical assistance could arrive. Id. at 794. Though the court acknowledged that "no one saw the workman strike a blow with his heavy sledge or lift a heavy piece of rock the moment before the hemorrhage occurred," it found that "the circumstances were clearly such that the jury would have been authorized to relate the hemorrhage to blood pressure intensified by vigorous muscular exertion." Id. Given this extreme exertion, the court found that the rupture of the plaintiff's pulmonary blood vessel "by force from within" was no less an accident than if the vessel "had been severed by the violent application of a sharp instrument from without." Id. The hemorrhage was "sudden, unexpected, and undesigned by the workman"; thus, it constituted an accident. Id.

As in Gilliland, Mr. Eck's injuries were brought about by vigorous physical exertion. Mr. Eck, along with seventy other firemen, was called to fight a large fire under extreme conditions for over an hour. The intensity of the work was

- 11 -

such that all four members of his crew were taken to rehabilitation immediately after. Like the hemorrhage in <u>Gilliland</u>, the rupture of chordal structures within Mr. Eck's heart could be found by a jury to be unexpected and unforeseen, even given that fighting fires under strenuous conditions was within his line of duty. We believe that the "jury would have been authorized" to conclude that Mr. Eck's loss was caused by "accidental bodily injury" under the policy. <u>Id.</u> at 794.

KCL argues that an established line of cases hold that heart attacks suffered while performing strenuous but ordinary work duties do not amount to "accidental bodily injuries." Aplee. Br. 12–14 (citing <u>Riesterer v. Crown Life Ins. Co.</u>, 653 F.2d 268 (6th Cir. 1981); <u>Botts v. Hartford Accident & Indem. Co.</u>, 585 P.2d 657 (Or. 1978); <u>Erbe v. Conn. Gen. Life Ins. Co.</u>, 695 F. Supp. 2d 232, 258–68 (W.D. Pa. 2010)). None arise under Kansas law. Regardless, they would not control here, where Mr. Eck did not suffer a heart attack, but instead ruptured chordal structures within his heart. To say that all heart injuries should be treated identically under AD&D contracts paints with far too broad a brush.

Throughout oral argument, KCL made much of the fact that no external manifestation of force—such as a falling beam or collapsing floor—operated upon Mr. Eck to bring about his injury. Even assuming that the extreme conditions of fighting a large fire for an extended period of time do not amount to such an external force, we are unpersuaded by KCL's argument. First, Kansas law does not require a "manifestation of force" for an injury to constitute an accident; it

merely notes that accidents are "*often* accompanied by a manifestation of force." Gilliland, 180 P. at 794 (emphasis added); see Boring, 496 P.2d at 1393 (accidents are "often, but not necessarily, accompanied by a manifestation of force" (citing Williams v. Benefit Tr. Life Ins. Co., 434 P.2d 765 (Kan. 1967))); Whitaker, 768 P.2d at 323. Further, even if Kansas law did practically require some "manifestation of force," the Kansas Supreme Court has rejected a distinction based on whether that force was internal or external. See Gilliland, 180 P. at 794 (finding that a "force from within" can bring about an accident no less than a force "from without").

Thus, we reverse the district court's grant of summary judgment to KCL on WFRA's claim under the AD&D rider.

## II.   Attorney's Fees

The district court explained that, in light of its finding that the AD&D rider did not cover Mr. Eck's injuries, WFRA's claim for attorney's fees under Kan. Stat. Ann. § 40-256 also failed as a matter of law. WFRA, 2014 WL 588064, at *15 n.8. KCL urges this court to affirm dismissal of WFRA's claim for attorney's fees, even if we reverse summary judgment on the issue of coverage. Aplee. Br. 31–37. We agree with WFRA that ruling on this claim in the first instance would be imprudent; thus, we vacate the district court's order and remand for reconsideration in light of our disposition.

- 13 -

REVERSED and REMANDED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge