No. 22,124.

MILLIE A. GILLILAND et al., *Appellants*, v. THE ASH GROVE LIME & PORTLAND CEMENT COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

COMPENSATION ACT—*Death from Pulmonary Hemorrhage—Injury Arose Out of Employment—An "Accident."* A workman's employment required him to break rock in a quarry with a 16-pound sledge and load the rock into a car, which was hard work. At noon he was in apparent good health and spirits, and ate all of the lunch which his wife brought to the quarry for him. In the afternoon, while at his working place, and shortly after he was seen beating a large rock with his sledge, he suffered a pulmonary hemorrhage, from which he died before medical aid could reach him. He had been working in the quarry for several months, and before that had worked for three years in the sacking department of a cement plant, an exceedingly dusty place. *Held,* the facts stated indicated injury by accident, and injury arising out of the employment, within the meaning of the first section of the workmen's compensation act.

Appeal from Neosho district court; SHELBY C. BROWN, judge. Opinion filed May 10, 1919. Reversed.

*T. F. Morrison,* of Chanute, for the appellants.

*J. K. Cubbison,* and *William G. Holt,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by dependents for compensation for death of a workman. A demurrer was sustained to the plaintiff's evidence, judgment was rendered for the defendant, and the plaintiffs appeal.

The deceased worked for about three years in the sacking department of the defendant's plant, and for several months

before his death worked in the defendant's quarry. The sacking department was an exceedingly dusty place. In the quarry, masses of rock were dislodged by the use of dynamite. Large masses were then reduced to fragments by the same means. Fragments larger than a man could lift, and weighing up to 500 pounds or more, were reduced by use of a sledge. Rock thus reduced was lifted and shoveled into small cars which were moved to the plant. While working in the quarry the workman was paid by the car for loading cars, and it was necessary for him to break up such fragments of rock as required reduction, by blows of a 16-pound sledge. Breaking rock was hard work, and in order to earn fair wages when paid by the car it was necessary for a man to work very hard.

The injury occurred on November 1, 1916. In July and August, 1915, the deceased was incapacitated for work for eight weeks on account of typhoid fever. On the day of the injury his wife took his lunch to him at the quarry, and was with him from about 11 a. m. until noon. He seemed to be feeling well, was cheerful and in good spirits, and ate all of his lunch. In the afternoon, while at his working place, he was observed to be bending over and bleeding copiously. Streams of blood were gushing from his mouth and nostrils, and he died before medical aid could reach him. Shortly before the hemorrhage occurred he was beating a rock weighing between 500 and 1,000 pounds, with his sledge. A physician testified as follows:

"Q. What would you say with reference to a man working three years in the sacking department of the Ash Grove Lime and Portland Cement Company, and after working there about three years going into the quarry to load rock, breaking big limestone rock with a 16-pound sledge hammer, what, if any, effect would that have to produce a hemorrhage; would it or not produce a hemorrhage? A. I think a person who had worked for three years in that sacking department could expect almost anything from it.

"Q. You may state to the jury now whether it would be likely to cause hemorrhage—working in the quarry, breaking rock with a 16-pound sledge and loading it. A. It might possibly do it.

"Q. In your judgment would it have a tendency to do it? A. Yes, sir, I think so."

The defendant justifies the ruling sustaining the demurrer to the evidence on the ground the workman did not suffer personal injury "by accident" within the meaning of the compensation act, which at the time provided as follows:

"If in any employment to which this act applies, personal injury by accident arising out of and in the course of employment is caused to a workman, his employer shall, subject as hereinafter mentioned, be liable to pay compensation to the workman in accordance with this act." (Gen. Stat. 1915, § 5896.)

The word accident does not have a settled legal signification. It does have, however, a generally accepted meaning, which is the same whether considered according to the popular understanding or the approved usage of language. An accident is simply an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force. The word undesigned must not be taken too literally in this connection, because a person may suffer injury accidental to him, under circumstances which include the design of another. The same warning may be extended regarding other elements of the definition; but as definitions go, the one here proposed is correct, at least for present purposes. In this instance all the characteristics of an accident were present. The occurrence was sudden, unexpected, and undesigned by the workman. While no one saw the workman strike a blow with his heavy sledge, or lift a heavy piece of rock the moment before the hemorrhage occurred, the circumstances were clearly such that the jury would have been authorized to relate the hemorrhage to blood pressure intensified by vigorous muscular exertion. Relating the hemorrhage to physical exertion, rupture of the pulmonary blood vessel by force from within was as distinctly traumatic as if the canal had been severed by the violent application of a sharp instrument from without. There was no direct evidence of extraordinary exertion suddenly displayed. When last observed, the deceased was working in the manner habitual to the employment. The fact remains, however, that an extraordinary and unforeseen things suddenly and unpremeditatedly occurred, and presence of all the essential attributes of accident cannot be gainsaid.

The defendant insists a sharp distinction must be made between injury as one thing, and accident producing it as another thing. Some courts have made this distinction, have confined casualty to antecedent cause alone, and have held that compensation may not be made for injury resulting from the intentional performance of usual acts in the usual way. The question

arose in England under the compensation act, the words of which were adopted by our own legislature in 1911: "Personal injury by accident arising out of and in the course of employment."

In the case of *Fenton v. Thorley & Co., Limited,* Appeal Cases [1903], page 443, the House of Lords considered and disposed of the question. A workman employed to turn the wheel of a machine felt something which he described as "a tear in his inside," and examination disclosed a rupture. There was no evidence of any slip or wrench or sudden jerk. The injury occurred while the man was engaged in his ordinary work, and in doing, or trying to do, the very thing he aimed to accomplish. The quoted provision was interpreted in the light of the manifestly beneficial and remedial purpose of the compensation act. The ordinary and popular meaning of the word accident as denoting mishap or untoward event not expected or designed, was accepted and applied, and it was held the expression "injury by accident" meant simply accidental injury, or accident in the popular sense. In the judgment delivered by Lord Macnaghten, reversing the court of appeal, and directing an award of compensation, it was said:

"If a man, in lifting a weight or trying to move something not easily moved, were to strain a muscle, or rick his back, or rupture himself, the mishap in ordinary parlance would be described as an accident. Anybody would say that the man had met with an accident in lifting a weight, or trying to move something too heavy for him. . . .

"There is . . . a recent decision of the court of session in Scotland to which I should like to call your Lordship's attention, and in which I agree entirely. It is the case of *Stewart v. Wilsons and Clyde Coal Co., Ld.* (5 F. 120). A miner strained his back in replacing a derailed coal hutch. The question arose, Was that an accident? All the learned judges held that it was. . . . What the miner did in replacing the hutch he certainly did deliberately and in the ordinary course of his work. There was nothing haphazard about it. Lord M'Laren observed that it was impossible to limit the scope of the statute. He considered that 'if a workman in the reasonable performance of his duties sustains a physiological injury as the result of the work he in engaged in' . . . 'this is accidental injury in the sense of the statute.' Lord Kinnear observed that the injury was 'not intentional' and that 'it was unforeseen.' 'It arose,' he said, 'from some causes which are not definitely ascertained, except that the appellant was lifting hutches which were too heavy for him. If,' he added, 'such an occurrence as this cannot be described in ordinary language as an accident, I do not know how otherwise to describe it.' " (pp. 446, 449.)

Lord Robertson expressed himself in the Fenton case as follows:

"It is not disputed that this man, being a person of ordinary strength, suffered personal injury while working at his employer's business, and because he applied such force to his work as to rupture him. Nor is it suggested that he hurt himself intentionally. The plain fact is that he miscalculated or by inadvertence did not compare the relative resisting forces of the wheel and his body. In this state of facts I am of opinion that this personal injury arose by accident out of and in the course of the man's employment, in the sense of the first section of the workmen's compensation act. . . . In the present instance the man by an act of over-exertion broke the wall of his abdomen. Suppose he had by the same act broken his leg, the question would be the same. But suppose the wheel had yielded and been broken by exactly the same act, surely the breakage would be rightly described as accidental. Yet the argument against the application of the act is in this case again exactly the same— that there is nothing accidental in the matter, as the man did what he intended to do. The fallacy of the argument lies in leaving out of account the miscalculation of forces, or inadvertence to them, which is the element of mischance, mishap, or misadventure." (pp. 451, 452.)

Lord Lindley said:

"The word 'accident' is not a technical legal term with a clearly defined meaning. Speaking generally, but with reference to legal liabilities, an accident means any unintended and unexpected occurrence which produces hurt or loss. But it is often used to denote any unintended and unexpected loss or hurt from its cause; and if the cause is not known the loss or hurt itself would certainly be called an accident." (p. 453.)

The same question arose in what is known as "the Spanner case," *Clover, Clayton & Co., Limited, v. Hughes,* decided by the House of Lords in 1910 (A. C. 242). The workman suffered from an aneurism. While engaged in tightening a nut with a spanner he fell dead from a rupture of the aneurism. In the opinion delivered by Lord Loreburn it was said:

"This man died from the rupture of an aneurism, and 'the death was caused by a strain arising out of the ordinary work of the deceased operating upon a condition of body which was such as to render the strain fatal.' Again, 'the aneurism was in such an advanced condition that it might have burst while the man was asleep, and very slight exertion, or strain, would have been sufficient to bring about a rupture.' These are the findings and they bind us.

"The first question here is whether or not the learned judge was entitled to regard the rupture as an 'accident' within the meaning of this act. In my opinion he was so entitled. Certainly it was an 'untoward event.' It was not designed. It was unexpected in what seems

to me the relevant sense, namely, that a sensible man who knew the nature of the work would not have expected it. I cannot agree with the argument presented to your Lordships that you are to ask whether a doctor acquainted with the man's condition would have expected it. . . . No doubt the ordinary accident is associated with something external— the bursting of a boiler, or an explosion in a mine, for example. . . . I think it may also be something going wrong within the human frame itself, such as the straining of a muscle or the breaking of a blood vessel. If that occurred when he was lifting a weight it would be properly described as an accident. So, I think, rupturing an aneurism when tightening a nut with a spanner may be regarded as an accident. . . . That, of itself, does not dispose of the case. It establishes that there may have been an injury by accident caused to the workman. But it does not establish that the accident was one 'arising out of the employment.' . . . I do not think we should attach any importance to the fact that there was no strain or exertion out of the ordinary. It is found by the county court judge that the strain in fact caused the rupture, meaning, no doubt, that if it had not been for the strain the rupture would not have occurred when it did. . . . An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health. . . . In each case the arbitrator ought to consider whether in substance, as far as he can judge on such a matter, the accident came from the disease alone, so that whatever the man had been doing it would probably have come all the same, or whether the employment contributed to it. In other words, did he die from the disease alone, or from the disease and employment taken together, looking at it broadly? Looking at it broadly, I say, and free from over-nice conjectures, was it the disease that did it, or did the work he was doing help in any material degree?" (pp. 245, 246, 247.)

In the opinion delivered by Lord Macnaghten it was said:

"My Lords, in this case your Lordships have heard a very able and ingenious argument upon the construction of the 1st section of the workmen's compensation acts. I need hardly say that it is not from any want of respect to the learned counsel who advanced it that I pass that argument by. It has been disposed of already. It was advanced and rejected in the case of *Fenton v. Thorley* (A. C. [1903] 443). There the court of appeal had held that if a man meets with a mishap in doing the very thing he means to do the occurrence cannot be called an accident. There must be, it was said, an accident and an injury: you are not to confuse the injury with the accident. Your Lordships' judgment, however, swept away these niceties of subtle disquisition and the endless perplexities of causation. It was held that 'injury by accident' meant nothing more than 'accidental injury' or 'accident,' as the word is popularly used. . . .

"Now in the present case, I have no doubt that there was an accident in the popular sense of the word. The man ruptured an aneurism in his

aorta. An aneurism, as I understand it, is an unnatural or abnormal dilation of an artery; but still it is a part of the artery, and so a part of the man's body. The man 'broke part of his body,' to borrow Lord Robertson's expression in *Brintons v. Turvey* (A. C. [1905] 230), and he certainly did not mean to do it.

"That the accident, if it was an accident, occurred in the course of the man's employment cannot be disputed. He was at his ordinary work at the time.

"The real question, as it seems to me, is this: Did it arise out of his employment? On this point the evidence before the county court judge was undoubtedly conflicting. But he has held that it did, and I think there was sufficient evidence to support that finding, though I do not say I should have come to the same conclusion myself. 'The death,' the learned judge says, 'was caused by a strain arising out of the ordinary work of the deceased operating upon a condition of body which was such as to render the strain fatal.' The fact that the man's condition predisposed him to such an accident seems to me to be immaterial. The work was ordinary work, but it was too heavy for him." (pp. 247, 249.)

These opinions prevailed, and the appeal, which was taken from a judgment of the court of appeal affirming an award of compensation, was dismissed.

Space has been given to the foregoing quotations because they exhaust the subject, and because they fixed the meaning of the terms used in the first section of the workmen's compensation act before their adoption by the legislature of this state. Besides this, they express views which the court believes to be sound.

It seems quite clear that if, because of some unobserved defect, the car which the workman was loading had broken down under its usual weight of stone, the giving way of the physical structure of the car would have been called an accident. The jury might not have considered they derived much enlightenment from the physician's very indefinite statement that the workman might have expected almost anything after working in the dust of the defendant's sacking department for three years. Certainly he would not expect typhoid fever from cement dust. The evidence warranted a finding that the physical structure of the man gave way under the stress of his usual labor. He certainly did not intend to kill himself by breaking rock and loading cars at a price per car. He did not know, or in any event he was inattentive to, the limited power of his blood vessels to resist blood pressure aggravated by vigorous

muscular effort. Out of this ignorance or miscalculation of forces came misadventure, and the term accident applies to what happened to him, as clearly as it would apply to what happened to the car had it broken down under the assumed circumstances.

The defendant insists that the workman died of disease; that is, the injury did not arise out of the employment. The question was one of fact, and should have been submitted to the jury. It is not material that the workman's blood vessels were weakened by disease, or that he was predisposed to hemorrhage because, for example, he had breathed the dust of the sacking department for three years. The statute establishes no standard of health for workmen, entitling them or their dependents to compensation, and if the added factor of physical exertion in the employment were required to effect the lesion, and did so, the injury arose out of the employment. That the injury occurred in that way, and is referable to a definite time, place, and circumstance, is indicated by the workman's apparent good health and strength, the suddenness and profusion of the hemorrhage, the absence of previous extravasation of blood, and other circumstances.

The judgment of the district court is reversed, and the cause is remanded for a new trial.