(926 P.2d 664)

No. 74,767

STATE FARM FIRE & CASUALTY CO., *Appellee*, v. LARRY C. FALLEY, *Defendant*, and DONALD G. LEGLEITER, *Appellant*.

Opinion filed November 8, 1996.

*William J. Pauzauskie*, of Topeka, for appellant.

*Michael J. Dutton*, of Wallace, Saunders, Austin, Brown & Enochs, Chtd., of Overland Park, for appellee.

Before GERNON, P.J., ROYSE, J., and WILLIAM F. LYLE, JR., District Judge, assigned.

ROYSE, J.: State Farm Fire & Casualty Co. (State Farm) filed this declaratory action to obtain a determination that its policy issued to Larry C. Falley did not cover injuries sustained by Donald G. Legleiter. The district court granted summary judgment to State Farm, and Legleiter appeals.

Falley went to the Phillips 66 service station at Sixth and Fairlawn in Topeka and filled his car with gas. A disagreement arose regarding Falley's failure to pay for the gas. Although the parties disagree about how Legleiter came to be there, they agree that Falley drove away from the station with Legleiter spread-eagled on the hood of the vehicle. Falley drove east on Sixth Street, finally slowing at the intersection of Sixth and Gage. At that point, Legleiter landed on the ground and was injured. A controversy remains as to whether Falley simply slowed his car or slammed on his brakes at the intersection, whether Legleiter was thrown off the car or got off the hood of the car, or whether Legleiter was knocked to the ground or fell to the ground.

State Farm had issued an automobile liability policy to Falley. It provides, in pertinent part:

"We will:

    1. pay damages which an *insured* becomes legally liable to pay because of:

        a. *bodily injury* to others . . . caused by accident resulting from the ownership, maintenance or use of *your car*."

The policy, however, excludes coverage "FOR ANY DAMAGES ARISING FROM AN INTENTIONAL ACT." State Farm's exclusion repeats verbatim the exclusion authorized by K.S.A. 40-3107(i)(6).

The district court concluded that State Farm's intentional act exclusion applied in this case. Relying on the principle that a party is presumed to intend the natural and probable consequences of his acts, the district court concluded Falley intended to cause injury to Legleiter as a result of his intentional act of driving his car with Legleiter on the hood. Legleiter appeals.

The sole issue on appeal is whether the district court erred in granting State Farm's motion for summary judgment. This issue first requires interpretation of the State Farm exclusion.

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995).

The interpretation of State Farm's exclusion is a question of law, subject to unlimited review by this court. See *Harris v. Richards*, 254 Kan. 549, 552, 867 P.2d 325 (1994). Just as coverage clauses are interpreted broadly to afford the broadest protection to the insured, exclusionary clauses are interpreted narrowly against the insurer. *United States Fidelity & Guar. Co. v. Farm Bureau Mut.*

*Ins Co.*, 2 Kan. App. 2d 580, 582, 584 P.2d 1264 (1978). See *Farm Bureau Mut. Ins. Co. v. Evans*, 7 Kan. App. 2d 60, 62, 637 P.2d 491 (1981), *rev. denied* 231 Kan. 800 (1982).

The Supreme Court's recent decision in *Harris* is helpful in resolving the question presented here. The facts of that case were as follows:

"Donald Harris was seated in the cab of his pickup truck with Kimberly Hawley. Douglas Hawley, Kimberly's ex-husband, fired two shotgun rounds into the back window of the pickup. Harris was on the driver's side and Kimberly was on the passenger side of the cab. When Douglas fired the shots he could not have seen whom he was shooting at due to darkness. The pellets struck Harris on the right side of his face, causing facial scarring and blindness. Douglas walked around to the side door and fired a third shot, which killed Kimberly. He then killed himself." 254 Kan. at 550.

Harris filed a petition against the administrators of Douglas' estate to recover his damages. The district court determined Harris' claim against the estate was limited to any available insurance coverage. The district court further concluded: (1) the shooting was not a covered occurrence under the terms of the applicable homeowners policy, and (2) the intentional acts exclusion of that policy applied. The Supreme Court affirmed. 254 Kan. at 550.

The Supreme Court first considered whether the shooting was an occurrence covered under the homeowners policy. The policy provided coverage for bodily injury caused by an occurrence. The term "occurrence" was defined in the policy as "an accident, including continuous or repeated exposure to conditions." 254 Kan. at 552.

Although the policy did not define "accident," the court explained that

" '[t]he word accident does not have a settled legal signification. It does have, however, a generally accepted meaning, which is the same whether considered according to the popular understanding or the approved usage of language. An accident is simply an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force.' *Gilliland v. Cement Co.*, 104 Kan. 771, 773, 180 Pac. 793 (1919)." 254 Kan. at 553.

The Supreme Court, applying the natural and probable consequences test, concluded the shooting of Harris did not fall within the policy coverage:

"The insured's intent to injure can be inferred when the resulting injury is a natural and probable consequence of the insured's act. [Citation omitted.] Douglas fired two shotgun blasts into the cab of Harris' pickup when he knew it was occupied. The natural and probable consequence of this act was that anyone occupying the cab would be injured. The shooting of Harris was not an accident under the Farm Bureau policy." 254 Kan. at 553.

The Supreme Court used a similar analysis in concluding the shooting also fell within the "intentional injury" exclusion of the policy: " '[W]e do not cover . . . [b]odily injury or property damage expected or intended by an insured.' " 254 Kan. at 554. The court rejected Harris' contention that insurance coverage was available because Douglas shot him by mistake. Because Harris' injuries were a natural and probable consequence of Douglas' act, the court concluded they were injuries intended by Douglas. 254 Kan. at 556.

Although *Harris* examined the provisions of a homeowners policy rather than an automobile liability policy, the analysis is equally applicable to this case. First, both policies provide coverage for bodily injury caused by accident. In *Harris*, the Supreme Court relied on the same definition of "accident" that has been used in cases concerning a variety of insurance policies. See *Spence v. Equitable Life Assurance Soc.*, 146 Kan. 216, 224, 69 P.2d 713 (1937) (life insurance policy with double indemnity provision for accidental death); *Allied Mut. Ins. Co. v. Patrick*, 16 Kan. App. 2d 26, 28, 819 P.2d 1233 (1991) (automobile liability insurance); *Whitaker v. State Farm Mut. Auto. Ins. Co.*, 13 Kan. App. 2d 279, 282, 768 P.2d 320 (1989) (personal injury protection benefits provided under automobile liability insurance policy). All of these cases rely on a definition of "accident" which was first propounded in a workers compensation case. See *Gilliland v. Cement Co.*, 104 Kan. 771, 773, 180 Pac. 793 (1919). Second, *Harris* relied on a series of cases that had developed the "natural and probable consequences" test for intentional injury exclusions, including a decision which construed an automobile liability insurance policy. 254 Kan. at 554-55; see *Rankin v. Farmers Elevator Mutual Insurance Company*, 393 F.2d 718 (10th Cir. 1968).

Legleiter argues the natural and probable consequences approach requires an additional showing that the insured acted with the belief that there was a substantial certainty his acts would result in injury. This argument is not persuasive.

Legleiter cites *Bell v. Tilton*, 234 Kan. 461, 674 P.2d 468 (1983), a case in which the Supreme Court did use "substantial certainty" language. There, three boys were playing a game involving shooting BB guns at each other when one was shot in the eye and suffered severe injury.

The plaintiff argued that because Rusty Tilton testified he did not have the specific intent to injure plaintiff's eye when he fired the BB gun at plaintiff's face, the injury was not, as a matter of law, "intentional" within the meaning of the policy exclusion for expected or intended injury. The Supreme Court rejected plaintiff's argument, holding: "Where an intentional act results in injuries which are a natural and probable result of the act, the injuries are intentional." 234 Kan. 461, Syl. ¶ 2.

Although the Supreme Court did refer to consequences which were "substantially certain to result," the Supreme Court did not add substantial certainty as an element of the natural and probable consequences test. 234 Kan. at 472. In fact, in *Harris* the court noted the *Bell* decision "endorsed the *Casualty Reciprocal Exchange* language that an insured is presumed to intend the natural and probable consequences of his or her acts." *Harris*, 254 Kan. at 556.

Legleiter also points to a number of secondary authorities cited in *Casualty Reciprocal Exchange v. Thomas*, 7 Kan. App. 2d 718, 721, 647 P.2d 1361, *rev. denied* 231 Kan. 799 (1982), in support of his argument that the natural and probable consequences approach requires proof that the insured acted with the belief that there was a substantial certainty his acts would result in injury. *Casualty Reciprocal Exchange*, however, concluded: "The better rule is found in *Rankin*, where it was held that where an intentional act results in injuries which are a natural and probable result of the act, the injuries are intentional." 7 Kan. App. 2d at 621; see 31 A.L.R. 4th 957, 991-92.

Legleiter argues alternatively that State Farm's exclusion, which contains language identical to the exclusion authorized by K.S.A. 40-3107(i)(6), requires proof the insured acted with the specific intent to injure the other person. Legleiter acknowledges the specific intent rule has been rejected in *Harris*, 254 Kan. at 556, and *Bell*, 234 Kan. at 472. See *Spivey v. Safeco Ins. Co.*, 254 Kan. 237, 245, 865 P.2d 182 (1993). Legleiter argues, however, that the earlier cases construed an exclusion for injuries "expected or intended by an insured," not the exclusion for "damages arising from an intentional act" which is at issue here. Legleiter further contends the earlier cases did not examine the statutory basis of the intentional act exclusion found at 40-3107(i)(6).

Legleiter's argument is not persuasive. Like this case, the earlier cases all start with a coverage clause for injuries arising by "accident," and they rely on the same definition of accident. Although recognizing the rule that coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured (see *United States Fidelity & Guar. Co.*, 2 Kan. App. 2d at 582), the earlier cases do not go so far as to limit the exclusion for injuries "expected or intended by an insured" to those injuries which the insured specifically intended.

In addition, the exclusion for injuries "expected or intended by an insured" would appear to be narrower than an exclusion for "any damages arising from an intentional act." Having rejected the specific intent test for the narrower exclusion, it is unlikely that our Supreme Court would require its application to injuries "arising from an intentional act."

Legleiter quotes from an insurance company lobbyist who supported the enactment of 40-3107(i)(6) to support his argument that "damages arising from an intentional act" excludes only those damages specifically intended by the insured. One problem with this contention is that the documents Legleiter describes as "legislative history" are obviously incomplete. Furthermore, the lobbyist's statement which Legleiter quotes refers to one who intentionally causes an accident; the statement does not suggest the exclusion applies only to the injuries specifically intended by the insured.

Finally, it is important to recognize that the purpose of our compulsory insurance law is to "provide a means of compensating persons promptly for *accidental* bodily injury." K.S.A. 40-3102; *Garrison v. State Farm Mut. Auto. Ins. Co.*, 258 Kan. 547, 550-51, 907 P.2d 891 (1995); *Barnes v. Kansas Dept. of Revenue*, 238 Kan. 820, 827, 714 P.2d 975 (1986); see 6B Appleman, Insurance Law and Practice § 4299 (1979). Intentional act exclusions also reflect the public policy prohibiting coverage for intentional and malicious acts. *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 686, 512 P.2d 403 (1973); see *Shelter Mut. Ins. Co. v. Williams*, 248 Kan. 17, 28, 804 P.2d 1374 (1991); *Gowing v. Great Plains Mutual Ins. Co.*, 207 Kan. 78, 84, 483 P.2d 1072 (1971) (Fontron, J., dissenting); 6B Appleman, Insurance Law and Practice § 4252, p. 7 (1979). These public aims are not served by an overly restrictive construction of the intentional act exclusion or by adopting a test which depends upon the after-the-fact testimony of the insured about his "subjective intent." See Ostrager and Newman, Handbook on Insurance Coverage Disputes § 8.03[c], p. 325 (8th ed. 1995).

State Farm asserts its exclusion should be interpreted in a fashion directly opposite to the specific intent approach; it maintains that once an intentional act by the insured is shown, the exclusion applies to any damages that result. State Farm cites no authorities which have adopted such an interpretation of this exclusion.

It is true that *Harris* and the other Kansas cases previously cited have construed an "intentional injury" exclusion, and the policy at issue here contains an "intentional act" exclusion. This difference does not warrant the overly broad reading of the exclusion urged by State Farm. See *Whitaker,* 13 Kan. App. 2d at 283 (refusing to endorse distinction between accidental means and accidental results); *Rankin,* 393 F.2d at 720 (refusing to make "subtle distinctions" between an intentional act and an intentional injury).

State Farm's argument runs afoul of the cases which define "accident" to include undesigned or unexpected events. If State Farm's proposed interpretation of the exception were adopted, the exception would effectively negate the coverage under the policy.

"Were we to follow that theory to its logical conclusion then there could never be a recovery for injuries sustained in an automobile collision because the driver of the offending automobile would unquestionably always have been intentionally driving same; therefore the act of driving being intentional the resulting injury would be intentional (under appellant's theory) and would therefore fall under the exclusionary provision of the policy." *Phoenix Insurance Company v. Helton*, 298 So. 2d 177, 181 (Fla. Dist. App. 1974).

As a final note, we have not overlooked *Hass v. Preferred Risk Mutual Ins. Co.*, 214 Kan. 747, 748, 522 P.2d 438 (1974), a case which involved an exclusion for injury "resulting from the intentional conduct" of the insured. Hass and another driver had been involved in an altercation, which culminated with Hass making a U-turn and driving into the other car. Hass sued his insurer, State Farm, alleging breach of contract and other theories. The case went to the jury on the issue of whether Hass' conduct had been intentional, and the jury returned a verdict in favor of State Farm. Hass appealed.

On appeal, the issue presented was whether there was sufficient evidence to support the verdict. Noting there was expert evidence that "Hass could have intended to cause the harm he did in fact cause under the circumstances in question," the Supreme Court affirmed the verdict. 214 Kan. at 751. The issue in *Hass* was not framed as a question of policy interpretation, and the Supreme Court did not purport to construe the language of the exclusion.

In summary, for all of the foregoing reasons, we conclude the exclusion for "any damages arising from an intentional act" encompasses any injury which is a natural and probable consequence of the insured's intentional act. The district court did not err by relying on the "natural and probable consequences" test.

Legleiter makes a further challenge to the district court's entry of summary judgment, arguing that disputed issues of material fact remain. We agree.

*Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, is instructive.

"In *Spruill*, the insured, Spruill Motors, Inc., had performed work on Rounkles' vehicle, which Rounkels drove the vehicle home without paying for services performed and garage personnel attempted to recover the vehicle. Rounkles saw his

vehicle being towed away and ran up to it in an attempt to open the door, at which time his foot was run over." *Harris*, 254 Kan. at 555.

The district court determined the insurance policy afforded no coverage for Rounkles' injury and therefore the insurance company was under no obligation to defend Spruill Motors in the action brought against it by Rounkles. The Supreme Court reversed: "As we view the facts, the act of taking possession of the truck, although intentional, was not the act which caused Rounkles' personal injury. If liability for personal injury attached it was caused by the manner in which the employees were moving the truck." 212 Kan. at 687.

In this case, there is no question Falley intentionally drove his vehicle with Legleiter spread-eagled on the hood. A question remains, however, whether Legleiter's injuries were caused by Falley's intentional act of driving with Legleiter on the hood. There is at least some testimony in the record that Legleiter was injured after Falley had stopped or nearly stopped his vehicle. Put in terms of State Farm's exclusion, a question of material fact remains whether Legleiter's injuries arose from Falley's intentional acts.

In light of this conclusion, we need not address the other issues raised by the parties.

Reversed and remanded for further proceedings.