**GUARANTY NATIONAL INSURANCE COMPANY, Plaintiff,**

**General Casualty Company of Wisconsin, Intervenor–Plaintiff,**

v.

**Christopher B. McGUIRE, Marvin L. Schleicher, and Patricia Schleicher, Defendants.**

No. 98–4193–SAC.

United States District Court, D. Kansas.

Oct. 4, 2001.

Gregory A. Lee, Davis, Unrein, Hummer, McCallister, Biggs & Head, L.L.P., J. Franklin Hummer, Med James, Inc., Shawnee Mission, KS, for Plaintiff.

Henry F. Sonday, Holbrook, Heaven & Osborn, P.A., Kansas City, MO, for Intervenor–Plaintiff.

Stephen G. Dickerson, Kugler & Dickerson, Kansas City, KS, for Defendants.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This declaratory judgment case based upon diversity jurisdiction comes before the court on cross motions for summary judgment. The accident giving rise to this insurance coverage dispute occurred on July 31, 1996, while two young men were joyriding in, and two others were following in a vehicle behind, a truck they had stolen.

Plaintiff Guaranty National Insurance Company, hereinafter "GNIC," insured an automobile owned by Rick and Pamela McGuire, parents of defendant Christopher McGuire. That policy contains a $25,000 bodily injury limit of liability. Intervenor General Casualty Company of Wisconsin, hereinafter "General Casualty," insured automobiles owned by defendants Marvin L. and Patricia Schleicher, and its policy included uninsured motorist coverage.

On July 31, 1996, Matt Schleicher was killed in an automobile accident while a passenger in McGuire's automobile driven by Christopher McGuire. Details of that event will be set forth below to the extent relevant to the pending motions. Thereafter, Matt's parents, defendants in this case, brought suit in the District Court of Wyandotte County, Kansas against Christopher McGuire for the wrongful death of their son. GNIC assumed the defense of

the case under a reservation of rights letter dated January 2, 1997.

Before the commencement of the wrongful death trial in state court, Marvin and Patricia Schleicher and Chris McGuire entered into an agreement which includes an assignment to the Schleichers of McGuire's contractual rights as an insured under the GNIC automobile policy in question. After trial to the court on February 25, 1998, Judge Murguia granted judgment in favor of the Schleichers in the principal amount of $107,246.16. General Casualty paid uninsured motorist benefits to the Schleichers as a result of the underlying accident, and has a subrogation interest in this action.

GNIC claims that no ·coverage exists under its automobile policy based upon the "illegality defense," contending that to cover losses or provide indemnification in situations involving criminal conduct would violate the public policy of the State of Kansas. Defendants and General Casualty[1] claim that the public policy defense is inapplicable and that GNIC is obligated to cover the damages based upon its general policy provisions. The parties have filed cross-motions for summary judgment.

## Summary Judgment Standards

The standards and procedures for summary judgment are well established and will not be fully repeated here. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In essence, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

 Since this is a diversity action, the district court is bound to apply the law of the forum state, *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including its choice of law rules. *See Klaxon v. Stentor Elec. Mfg.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Kansas is the forum state and its choice of law directs a court to turn to the state where the policy was made. It has long been the law of Kansas that the lex loci contractus governs the construction of contracts. *Hefferlin v. Sinsinderfer,* 2 Kan. 401 (1864). "A contract is made at the time when the last act necessary for its formation is done, and at the place where that final act is done." *Smith v. McBride & Dehmer Const. Co.,* 216 Kan. 76, 530 P.2d 1222, Syl. P 1, 216 Kan. 76, 530 P.2d 1222 (1975).

 The parties have not presented facts showing where the policy of insurance was made, but all parties proceed as though it were made in Kansas. Because the policy itself supports, although does not mandate, this conclusion, *see* Dk. 71, (policy titled "KANSAS easy to read auto policy"), and no other evidence has been presented on this issue, the court proceeds upon the same assumption, and will apply Kansas substantive law to its interpretation of the contract and the enforcement thereof.

## Facts

Numerous facts immaterial to the issues addressed herein have been omitted. Ordinarily, the court construes controverted facts in the light most favorable to the non-moving party. Here, where all parties have not only moved for summary judgment, but have also opposed the other party's motions for summary judgment,

---

1. Because defendants and General Casualty have filed a joint motion and memorandum, the court refers to these parties collectively herein for purposes of convenience as "defendants."

this rule of construction is of no assistance to the court. Unless otherwise noted, the parties have agreed in their briefs to this court that the facts set forth below are undisputed.

On July 31, 1996, four young men aged 18 to 22 were vacationing in Camden County Missouri. They had traveled there in a vehicle owned by Christopher McGuire's parents, and insured by the plaintiff, GNIC. That afternoon the four of them drove to a store near Camdenton, Missouri. Paul Smith was driving the McGuire's vehicle, as he was the one most familiar with the area. Paul Smith parked the McGuire's vehicle in the parking lot and exited it. It is controverted whether or not Matt Schleicher also exited McGuire's vehicle.

As Smith was walking toward the store, he saw a pick-up truck with keys in the ignition and the engine running. Without permission of the owner of the truck, Smith got into the driver's side of the truck, backed it out and drove it away. Smith's decision to steal the truck was spontaneous. It is contested whether Matt Schleicher also got into the truck with Smith. Smith drove the truck past the McGuire's vehicle, and made sure that he was noticed by the young men who remained therein. Sean McGuire drove his parents' vehicle and followed the stolen truck.

After the stolen truck and the McGuire's vehicle left the parking lot, the young men drove around, stopping on at least two occasions to let the young men take turns riding individually in the truck with Smith. It is contested whether or not Matt Schleicher rode in the truck at any time prior to his death. Smith drove the truck at all times, followed by McGuire's vehicle, down several gravel roads in rural areas of Camden County, Missouri, never driving in excess of 35 miles per hour. After approximately two hours of so doing, while Matt

Schleicher was a passenger in the McGuire's vehicle and Chris McGuire was driving, Chris McGuire lost control of his vehicle on a gravel road. McGuire's vehicle flipped or rolled-over, causing fatal injuries to Matt Schleicher.

At the time of the accident, the stolen truck was some distance down the road. Although neither Smith nor Sean McGuire, who were in the truck at the time, saw the accident, they returned to the scene, uprighted the McGuire's vehicle, got Matt out, placed him in the bed of the truck, and drove to seek assistance.

Soon thereafter, Smith and Chris McGuire each pled guilty to a Class C felony for stealing in the Circuit Court of Camden County, Missouri. Sean McGuire pled guilty to tampering, a Class A misdemeanor, in that same court.

**Analysis**

The overriding issue in these summary judgment motions is whether Kansas public policy prohibits insurance coverage for the events in question. It is undisputed that coverage is otherwise afforded under the provisions of the policy, and that the only defense raised by GNIC is the public policy illegality defense.

Kansas recognizes the general rule that "an insurance policy is void as against public policy if it is intended to indemnify the insured against liability for his criminal acts." *Herrman v. Folkerts*, 202 Kan. 116, 446 P.2d 834, Syl. ¶ 2 (1968). *See* Couch on Insurance 2d (Rev. ed.) § 45.11, p. 242, citing *Herrman* for the proposition that a "liability policy cannot validly indemnify the insured with respect to the consequences of his own criminal conduct." In *Herrman*, the Kansas Supreme Court determined that insurance coverage for taking a tractor without permission of the owner, and damaging it in the process, was excluded by a specific clause in the policy, then noted that their decision was "influ-

enced" by the consideration that the acts constituted a crime, citing the public policy rule stated above. 202 Kan. at 119, 446 P.2d 834.

Several years later in an eloquent dissent in *Gowing v. Great Plains Mut. Ins. Co.*, 207 Kan. 78, 483 P.2d 1072 (1971), J. Fontron examined an insurer's duty under a policy exclusion, where the insured was injured from an assault and battery. Therein he noted "the general rule ... that a policy indemnifying an insured against liability for his own willful wrongs is void as against public policy." 207 Kan. at 84, 483 P.2d 1072. He cited the rationale of the rule as follows:

'... The reason the insurance policy denies coverage of an assault and battery committed by or at the direction of an insured is that it would be contrary to public policy to indemnify a person for a loss incurred as a result of his own willful wrongdoing. 7 Appleman, Insurance Law and Practice, § 242b (1942)....'

207 Kan. at 84, 483 P.2d 1072, citing *Malanga v. Manufacturers Cas. Ins. Co.*, 28 N.J. 220, 225, 146 A.2d 105, 108. *See State Farm Fire and Cas. Co. v. Martinez*, 26 Kan.App.2d 869, 995 P.2d 890 (2000) ("It is contrary to public policy to allow a wrongdoer to insure against civil penalties associated with such wrongdoer's own actions."). The judge cautioned that "courts should not lose sight of this principle in construing insurance contracts." 207 Kan. at 84, 483 P.2d 1072.

More recently, the illegality defense was squarely applied to bar coverage under an automobile policy. In *Parker v. Mid–Century Ins. Co.*, 25 Kan.App.2d 329, 962 P.2d 1114 (1998), John Hurt and four of his friends drank alcohol, left a juvenile offender facility without permission, and stole a car. They were eventually detect-ed by the police and a high-speed chase ensued. Hurt, a passenger, was killed after the driver lost control of the car. Parker, Hurt's mother, sued Mid–Century under the insurance contract on her car, which was not involved in the accident, seeking damages for the death of her son through the uninsured motorist coverage and personal injury protection benefits.

The trial court granted summary judgment in favor of Mid–Century based upon the illegality defense. The Court of Appeals affirmed, stating:

The illegality defense is based on the principle that a party who consents to and participates in an illegal act may not recover from other participants for the consequences of that act. The defense will be applied to bar recovery if the evidence shows that the plaintiff freely and voluntarily consented to participate in the illegal act, without duress or coercion. K.S.A. 60–208(c); *see Lee v. Nationwide Mutual Insurance Co.*, 255 Va. 279, 282, 497 S.E.2d 328 (1998).

25 Kan.App.2d at 331–32, 962 P.2d 1114. The Court of Appeals noted:

In our case, the purpose of the illegality provision would be defeated if an heir of one of the parties involved in the car theft would be allowed to collect from the insurer through a wrongful death action for the illegal acts of a co-malefactor. (Citation omitted.)

25 Kan.App.2d at 333, 962 P.2d 1114.

Although GNIC recognizes this principle, it contends that the facts here are distinguishable. In both *Herrman* and *Parker*, the damage or injury occurred while the actor was in the process of committing a criminal act and was a reasonably foreseeable consequence of such criminal act. Those courts had no need to determine the issue of remoteness posed here.[2]

---

2. No party alleges that Matt was not engaged in a criminal act at the time of his death, or

Kansas cases have not articulated a test for determining how close a relationship is required between the criminal acts and the damages incurred for the illegality defense to bar recovery. In examining the defense Kansas courts have, however, consistently referred to the "consequences" of the act, or the "results" of the act. *See e.g., Gowing,* 207 Kan. at 84, 483 P.2d 1072 (noting rationale that "it would be contrary to public policy to indemnify a person for a loss incurred as a result of his own willful wrongdoing"), citing *Malanga,* 28 N.J. at 225, 146 A.2d 105; *Parker,* 25 Kan.App.2d at 331, 962 P.2d 1114("a party who consents to and participates in an illegal act may not recover from other participants for the consequences of that act"); *Joy v. Brown,* 173 Kan. 833, Syl ¶ 1, 252 P.2d 889 (1953) ("Generally a party who consents to an immoral or illegal act cannot recover from other participants thereto for consequences of such act.").

Kansas courts have developed a test for determining how close a relationship is required between intentional acts and the injuries incurred, in construing intentional acts exclusions. The "natural and probable consequences" test is routinely applied to intentional acts exclusions under insurance policies. *See e.g., State Farm Fire & Cas. Co. v. Falley,* 23 Kan. App.2d 21, 28, 926 P.2d 664 (1996); *Harris v. Richards,* 254 Kan. 549, 554–55, 867 P.2d 325 (1994); *Bell v. Tilton,* 234 Kan. 461, 674 P.2d 468 (1983) ("Where an intentional act results in injuries which are a natural and probable result of the act, the injuries are intentional."); *see also Rankin v. Farmers Elevator Mut. Ins. Co.,* 393 F.2d 718 (10th Cir.1968). Under this test, the policy exclusion for "any damages arising from an intentional act" encompasses only those injuries which are natural and probable consequences of the insured's in-

tentional act. *Falley,* 23 Kan.App.2d at 28, 926 P.2d 664.

In *Falley,* an automobile liability insurer sought a declaratory judgment for injuries sustained by a victim who fell off the hood of an insured's vehicle. It was undisputed that Falley intentionally drove his vehicle with Legleiter spread-eagled on the hood, but the court found a material question of fact as to whether Legleiter's injuries were caused by Falley's intentional act of driving with Legleiter on the hood, and thus "arose from" Falley's intentional acts. There, an automobile insurance policy's intentional acts exclusion of liability coverage for "any damages arising from an intentional act" was held to encompass any injury which was the natural and probable consequence of insured's intentional act. K.S.A. 40–3107(i)(6).

The court finds *Falley* instructive. The Kansas Court of Appeals in *Falley* rejected the assertion that the natural and probable consequences approach requires proof that insured acted with the belief that there was a substantial certainty his acts would result in injury. 23 Kan.App.2d at 25, 926 P.2d 664. The court found the better rule to be that "where an intentional act results in injuries which are a natural and probable result of the act, the injuries are intentional." *Id.*

*Falley* additionally rejected the claim that the exclusion was effective only for those damages or injuries which were specifically intended by the insured. 23 Kan. App.2d at 26, 926 P.2d 664. The court also rejected the opposite approach urged by the insurer, *i.e.,* that once an intentional act by the insured is shown, the exclusion applies to any damages that result. *Id.,* at 27, 926 P.2d 664, finding that such an interpretation would effectively negate coverage under the policy.

*that any criminal activity he was engaged in* had ceased.

GNIC appears to believe that once the insured is shown to have been involved in a criminal act, public policy dictates no recovery for any damages that result. The court finds no authorities which have adopted such an interpretation of this defense, and a similar approach was rejected in *Falley*, in examining the intentional acts exclusion. Just as an automobile insurance policy's exclusion of liability coverage for any damages arising from an intentional act does not apply to all damages that result once an intentional act by insured is shown, *see Falley*, 23 Kan.App.2d at 27, 926 P.2d 664, neither does the public policy criminality defense apply to all injuries that result once a criminal act is shown.

The causation issue was the focal point in *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 512 P.2d 403 (1973). There the insured, Spruill Motors, Inc., had performed work on Rounkles' vehicle, which Rounkles thereafter drove home without paying for services performed. When garage personnel attempted to recover the vehicle, Rounkles approached and attempted to open the door, at which time his foot was run over. The district court determined the insurance policy afforded no coverage for Rounkles' injury under the policy's intentional acts exclusion.

The Supreme Court reversed, based upon the causation issue, stating: "As we view the facts, the act of taking possession of the truck, although intentional, was not the act which caused Rounkles' personal injury. If liability for personal injury attached it was caused by the manner in which the employees were moving the truck." 212 Kan. at 687, 512 P.2d 403. This result was consistent with the policy language, limiting coverage to an injury "caused by an occurrence," which term was defined to mean an accident resulting in injury neither expected nor intended from the standpoint of the insured. *See*

212 Kan. at 684, 512 P.2d 403. Because it was undisputed that Rounkle's injury was not the intended result of Spruill's acts, the injury was deemed to have been caused by an occurrence for which coverage existed. *Id.* at 687, 512 P.2d 403.

Although Kansas cases have not addressed the causation issue in the context of the illegality defense, the court has found one case from another jurisdiction which has. *See Becker by Kasieta v. State Farm Mut. Auto. Ins. Co.*, 220 Wis.2d 321, 582 N.W.2d 499 (Wis.App. May 28, 1998) (holding that public policy bars insurance coverage only for damages caused by criminal acts, rejecting conclusion that public policy prohibits coverage at any time that the insured is involved in the commission of a criminal act.). In *Becker*, boys were involved in criminal acts at the time of an automobile accident. These acts included operating a motor vehicle without a license, using a vehicle without the owner's permission and transporting stolen beer and liquor. There, as here, the insurer did not contend that any specific language in its policy excluded coverage, but argued that coverage was precluded by public policy because both the plaintiff and the insured were involved in criminal activity at the time the injuries occurred. *Id.*, at 325, 582 N.W.2d 499. The court found no evidence that any of the illegal activities caused the injuries for which Becker sought compensation. Instead, the cause of those injuries was the driver's reckless driving.

Intentional act exclusions reflect the public policy prohibiting coverage for intentional and malicious acts. *Spruill Motors*, 212 Kan. at 686, 512 P.2d 403; *Falley*, 23 Kan.App.2d at 27, 926 P.2d 664, citing *Shelter Mut. Ins. Co. v. Williams By and Through Williams*, 248 Kan. 17, 28, 804 P.2d 1374 (1991); *Gowing*, 207 Kan. at 84, 483 P.2d 1072 (Fontron, J., dissenting); 6B

Appleman, Insurance Law and Practice § 4252, p. 7 (1979). This public policy has been codified at Kan. Stat. Ann. § 40–3107(6) (mandating motor vehicle liability insurance but permitting any insurer to exclude coverage "for any damages arising from an intentional act.")

The court believes that the public policy considerations underlying the intentional acts exclusion are identical to those underlying the public policy criminality defense. *See Bell,* 234 Kan. at 470, 674 P.2d 468 (citing the "well-established presumption in both tort and criminal law that persons are presumed to intend the natural and probable consequences of their actions."); *See also All American Inc. Co. v. Burns,* 971 F.2d 438, 441 (10th Cir.1992) (interpreting exclusion for personal injury arising out of willful violation of penal statute by any insured to "clearly exclude all damages caused by criminal violations" from coverage under the policy.) Based upon this rationale, and the language of the few Kansas cases which have examined the criminality defense, the court believes that Kansas courts would apply the "natural and probable consequences" test in determining the applicability of the illegality defense, just as they do in determining the applicability of intentional acts policy exclusions.

The court therefore examines the record to determine whether Matt Schleicher freely and voluntarily consented to participate in an illegal act, without duress or coercion, and if so, whether his injuries or death for which his parents seek to recover were the natural and probable consequence of his criminal act. *See Parker,* 25 Kan.App.2d at 331–32, 962 P.2d 1114. If so, the defense will be applied to bar recovery.

■ The record contains no facts which would suggest that Matt's decision to participate in the theft of the truck was anything but free and voluntary. Although the initial decision to steal the truck was a spontaneous one made by Matt's friend, there is no evidence that Matt objected to or protested the theft of the truck in any manner. Matt had several opportunities thereafter when the truck stopped and switched riders to get out of whatever vehicle he was in and walk away. Matt was 19 years old and of sound mind. Although "some or all" of the men drank beer or whiskey prior to the theft of the truck, there is no evidence to show that Matt was intoxicated to a point that he was incapable of freely and voluntarily consenting to join his friends in the illegal venture. No evidence has been shown that Matt was coerced, cajoled, intimidated, threatened, under duress, or that his free will was otherwise overcome at the moment Smith decided to steal the truck or thereafter. It thus appears that Matt Schleicher freely and voluntarily consented to participate in the illegal act of stealing the truck, without duress or coercion.

The more difficult inquiry is whether Matt's injuries and death were the natural and probable consequence of his criminal act of stealing the truck. Matt was not in the truck at the time of the accident, nor did he ever drive the truck. He may or may not have ridden in the truck at some time prior to the accident, but the court finds this dispute immaterial. The accident in the McGuire's vehicle was not caused by any act directly related to the theft of the truck or by the manner in which the truck was driven. Instead, it was attributable solely to the manner in which the vehicle following the truck was driven. The accident did not occur during a high speed chase of the stolen vehicle, or any evasive driving taken to elude law enforcement officers, or any use of the stolen truck, or any foreseeable event flowing from the theft of the truck. No evidence suggests that the McGuire's vehicle would have been driven any differently if it

had not been following the stolen truck. The accident did not occur in close temporal proximity to the theft of the truck, but approximately two hours thereafter. The accident occurred because the driver, while following the stolen truck at a distance not shown to be inappropriate, lost control of the vehicle on a gravel road while going no more than 35 miles per hour.

Under these circumstances, the court finds that the injuries Matt suffered were too insignificantly connected to the act of stealing the truck to bar recovery. His criminal conduct was not a substantial factor in bringing about the harm he suffered, and the injuries he sustained could not have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence as a natural and probable result of his participation in stealing the truck. Although a remote connection exists between the act of stealing the truck and the injuries Matt suffered, the facts fail to demonstrate the requisite causal connection. Because Matt's injuries were not the natural and probable consequence of the criminal act, the public policy criminality defense is no bar to recovery.

The court additionally notes that the insurance contract does not contain a "violation of law" clause. GNIC is thus asserting that this court should rewrite the policy to provide for a contingency which it could have provided for itself. However, under the facts of this case, the court is not confronted with any overriding public policy which would preclude recovery. There is no evidence that the policy was procured in contemplation of the crime, that it promoted the unlawful act in some manner, or that recovery would reward a criminal for his illegal acts. It seems equally implausible that denying coverage would serve as a crime deterrent.

■ Defendants additionally request interest and attorneys' fees for this declaratory judgment action. This request for attorneys fees is premised upon *Farm Bureau Mut. Ins. Co. v. Kurtenbach*, 265 Kan. 465, 961 P.2d 53 (1998), which allegedly holds that the insured "is entitled to attorney fees and expenses in defending an insurer's declaratory judgment action seeking to avoid coverage so long as there is a determination that coverage exists." (Dk.71, p. 37), as well as upon the policy language. The court does not reach the disputed issue of whether *Kurtenbach* applies, and instead addresses solely defendants' allegation that attorneys' fees are warranted under the policy language.

The Liability Coverage section of GNIC's policy includes the following language as the final paragraph of the "Additional Benefits" subsection: "We will pay other reasonable expenses incurred at our request, including up to $150 a day for loss of earnings because of attendance at hearings or trials at our request." (Dk.71, Exh. 1, p. 3). Defendants allege that their attorneys' fees are a reasonable expense incurred at GNIC's "request" because GNIC brought this declaratory judgment action.

This issue is not a matter of first impression for federal courts in Kansas. In *North River Ins. Co. v. Huff*, 628 F.Supp. 1129 (D.Kan.1985), fees were awarded against an insurer who brought a declaratory judgment action to avoid coverage. There, the contract of insurance stated: "[t]he company shall pay the insureds for all reasonable expenses other than salaries, wages and loss of earnings incurred at the company's request...." *Id.* at 1135. In so ruling, the court relied upon *Upland Mutual Ins., Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974), which addressed a similar situation.

The policy in *Upland* provided that "this Company shall pay, in addition to the applicable limits of liability ... all reasonable expense, other than loss of earnings, in-

curred by the insured at this Company's request." *Id.* at 147, 519 P.2d at 739. The filing of a declaratory judgment action was interpreted as a "request" under the policy language. *Id.* at 152, 519 P.2d at 742–43. The court concluded that the company was obligated under the "request" section of the policy to reimburse the expenses incurred in the insured's defense of the declaratory judgment action.

Similarly, in *Citizens Ins. Co. of America v. Charity*, 871 F.Supp. 1401 (D.Kan. 1994), the court found Citizens' filing of a declaratory judgment action to constitute a "request" on the part of Citizens under the contract language, obligating the company to reimburse the insured for attorneys' fees. There, the policy stated the insurer would pay for "all reasonable expenses incurred by the "insured" at our request, including actual loss of earning up to $100 a day because of time off from work." 871 F.Supp. at 1404.

The rationale for this rule is stated in *Connecticut Fire Ins. Co. v. Reliance Ins. Co. of Madison, Wis.,* 208 F.Supp. 20 (D.Kan.1962), as follows:

> The insurance contract issued by plaintiff requires it to reimburse the insured for all reasonable expenses, other than loss of earnings, incurred at the company's request. The purpose of the provision in the policy providing for a defense even if the suit is groundless, false or fraudulent, is to guarantee that the purchaser of a policy of liability insurance will be protected from all expense. The provision to reimburse the insured for expense incurred, at the company's request, is merely an extension of this protection. The insured has in no way breached his contract of insurance or failed to cooperate. The action of the plaintiff in filing a declaratory judgment action and having summons issued and served upon its insured required him to appear and answer in the declaratory judgment action, and constitutes a request of the plaintiff and, therefore, the plaintiff is liable under the provisions of its insurance contract for the attorneys' fees incurred by the insured.

208 F.Supp. at 27.

The court finds the contract language in the present case to be substantially similar to the controlling language in the above cases. Thus the insured is entitled to reimbursement of reasonable attorney fees incurred in defending this declaratory judgment action brought by GNIC, under the policy language as a matter of contractual agreement. Defendants are not the named insured, however, under the policy, and the parties have not sufficiently addressed whether the assignment to the Schleichers from Chris McGuire of his contractual rights under the policy obligates GNIC to pay the defendants' attorneys' fees, or whether interest is owed.

Accordingly, the parties are to confer regarding defendant's entitlement to and amount of attorneys' fees and interest. In the event agreement cannot be reached, defendants shall file a motion and memorandum for attorneys' fees and interest no later than November 1, 2001, together with affidavits, billing records and/or other relevant documentation. Plaintiffs will be permitted to file a response thereto no later than November 11, 2001, and the court will subsequently determine whether a hearing on the matter will be necessary.

IT IS THEREFORE ORDERED that the joint motion of defendants Marvin L. Schleicher and Patricia L. Schleicher and intervenor General Casualty Company of Wisconsin for summary judgment (Dk.64) is granted, and that the motion of plaintiff Guaranty National Insurance Company for summary judgment (Dk.63) is denied.

IT IS FURTHER ORDERED that the parties immediately confer regarding defendants' request for interest and attor-

neys' fees; that in the event agreement cannot be reached, defendants shall file a motion and memorandum for attorneys' fees and interest no later than November 1, 2001, together with affidavits, billing records, and/or other relevant documentation, and including a certificate detailing the steps taken by counsel to resolve these issues in compliance with the duty to confer; that plaintiff will be permitted to file a response thereto no later than November 11, 2001; and that the court will subsequently determine whether a hearing on the matter will be necessary.

IT IS FURTHER ORDERED that plaintiff's motion to reply to defendants' substitute reply (Dk.86) is granted.